## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA
### Civil Division

| | |
|---|---|
| **UNITED STATES OF AMERICA AND THE STATE OF NEVADA** *ex rel.* **MARY KAYE WELCH** 2709 Meander Circle Las Vegas, NV 89117 <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **MY LEFT FOOT CHILDREN'S THERAPY, LLC** 2012 S. Jones Blvd. Las Vegas, NV 89146 <br><br> **ANN MARIE GOTTLIEB** 2974 Kedleston St. Las Vegas, NV 89135 <br><br> **JONATHAN GOTTLIEB** 2974 Kedleston St. Las Vegas, NV 89135 <br><br> **Defendants.** | **Civil Action No. 2:14-cv-01786-MMD-GFW** <br><br> **FILED UNDER SEAL** <br> **First Amended Complaint for Violations 31 U.S.C. § 3729** *et seq.* **(The False Claims Act) and Nev. Rev. Stat. § 357.040(b) (The Nevada False Claims Act)** <br><br> **JURY TRIAL DEMANDED** |

1

## INTRODUCTION

1.      Relator Mary Kaye Welch works for Defendant My Left Foot Children's Therapy, LLC ("MLF") as a speech and language pathologist.

2.      MLF is a company that provides various therapy services to children.

3.      Defendants Ann Marie and Jonathan Gottlieb are co-owners of MLF.  Defendants treat approximately 1,800 children each week.

4.      Defendants' mission is clear: to treat every child that walks through the door. Defendants believe that no child is too low functioning or too high functioning for treatment.

5.      MLF even treats Spanish-speaking children who do not have any diagnostically confirmed speech and language problems.

6.      Once Defendants secure therapy for a child, they implement polices instructing therapists to keep the child at MLF as long as possible.

7.      When MLF's qualified therapists request that Defendants discharge a child because the child is no longer making any progress, Defendants vehemently reject the therapist's medical opinion stating that, "No child NEVER makes NO PROGESS.  It's an impossibility."

8.      Defendants then direct therapists to change their progress reports in order to secure additional therapy from Medicaid.

9.      Defendants also threaten to terminate the therapists.

10.      As a result, during Welch's tenure, approximately five therapists have resigned.

11.      After Welch's tenure, approximately twenty-one therapists have left MLF, either because they have resigned in protest of MLF's fraudulent billing practices or because MLF has terminated their employment because the therapists did not follow MLF's mandate to upcode or falsify documentation.

12.     While Defendants tout themselves as advocates for children, their policies and refusal to listen to their therapists' recommendations demonstrate their true intentions: to treat 100% of the children who walk through the door, keep children at MLF as long as possible, and fraudulently billing Medicaid by billing for unnecessary treatments and also upcoding for services rendered.

13.     Thus, Defendants violated and continue to violate the federal False Claims Act and the Nevada False Claims Act by: (1) providing medically unnecessary services; (2) upcoding services rendered, and (3) unnecessarily extending treatment for patients.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action under 31 U.S.C. §§ 3730 and 3732.

15.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732 (a) because Defendants transacts business in this judicial district.

16.     Venue is proper in this District pursuant to 31 U.S.C. § 3732 (a) and under 28 U.S.C. § 1391(c) because Defendants transacts business in this judicial district.

## THE PARTIES

### *Mary Kaye Welch*

17.     Welch is currently a resident of Las Vegas, Nevada.

18.     In 1973, Welch earned her bachelor's degree in psychology and, in 1978, Welch earned her master's degree in Communication Disorders from Our Lady of the Lake University in San Antonio, Texas.

19.      Over the next forty years, Welch developed extensive practical experience in speech and language therapy.

20.     Speech-language pathologists identify, assess, and treat speech and language problems, including swallowing disorders.

21.     Welch has also served as an expert witness in the field of speech and language therapy in six court cases.

22.     Approximately ten years ago, Welch became Medicaid certified.

23.     Welch previously served as the Director of Compliance for SunDance Rehabilitation Corporation which provided therapy services primarily for Medicare patients.

24.      In this position, Welch received experience related to medical necessity, reasonable functional outcome, and accuracy related to documentation.

25.     On or about September 1, 2013, MLF hired Welch as a speech and language pathologist with a salary of $89,000.

26.     Welch handles a diverse caseload comprised of children exhibiting complex speech, language, swallowing, and behavioral disorders.

27.     In this role, Welch is responsible for performing initial evaluations on incoming patients, treating a case load of approximately seventy-five to eighty children, administering various speech and language tests, preparing progress notes.

28.     Thus, Welch has intimate knowledge of Defendants' fraudulent conduct through her professional responsibilities at MLF.

***My Left Foot Children's Therapy, LLC***

29.     MLF is a Nevada limited-liability company.

30.     MLF provides physical therapy, occupational therapy, speech therapy, aquatic therapy, adaptive swimming lessons and group classes for children with special needs.

31.     MLF maintains four different facilities in the Las Vegas area.

32.     In or about 2004, Ann Marie and Jonathan Gottlieb started MLF.

33.     In 2012, MLF was treating approximately 1,200 children a week.

34.     In more recent years, that number has increased to approximately 1,800 children each week.

35.     MLF accepts several different types of insurance including Medicaid.

36.     Approximately seventy-five percent of MLF patients pay for services through Medicaid.

37.     MLF bills most of its speech and language therapy services using the CPT code92507 and 92526.  In addition, the following codes are used for evaluations by MLF and in the industry: 92521, 92522, 92523, 92524.

38.     MLF employs approximately between fifty-five and one hundred people.

39.     Of those fifty-five people approximately thirty-one work on administrative matters, while the rest are therapists.

40.     Clinical Management Director Joe Blake serves as a liaison between the administrative staff and therapy staff.

41.     MLF opened the Midwest Stroke and Rehab Center in Las Vegas, Nevada in or about July 2014.

***Ann Marie Gottlieb***

42.     Ann Marie Gottlieb, an occupational therapist, is the co-owner of MLF.

43.     Ann Marie plays a large role in managing MLF.

44.     Ann Marie previously reviewed therapist caseloads, reviewed therapists' progress reports and notes, reviewed the level of treatment a child was receiving, and determined the appropriate time to discharge a child from treatment.

45.     Ann Marie keeps track of MLF employees using audio and visual surveillance, while working from home.

46.     Ann Marie is an occupational therapist, but is not qualified in speech or physical therapy.

***Jonathan Gottlieb***

47.     Jonathan Gottlieb is the co-owner of MLF and is listed as the registered agent for MLF.

48.     Jonathan is responsible for making decisions about daily operations.

49.     Jonathan does not have any experience in running or managing a therapy clinic. Jonathan has a college degree in computer science.

50.     Jonathan does not have any qualifications as in occupational, speech, or physical therapy.

51.     Jonathan tells his MLF staff members that he does not hire any therapists who have lived in Las Vegas for any length of time. He repeatedly instructs his staff members that they are not to talk with MLF therapists or interact with them socially.

52.     MLF required its employees to sign a non-fraternization agreement. .

**FACTUAL ALLEGATIONS**

***Billing to Nevada Medicaid***

53.     Usually, before a child attends an initial evaluation at MLF, a physician writes a referral for the child.

54.     In some instances, a child attends the initial evaluation without a physician referral.

55.     In most cases, the physician does not perform any type of tests or evaluations to determine if the child needs a referral.

56.     If a parent wants his or her child to attend therapy, the parent can visit multiple physicians ("doctor shop") until the parent finds a physician that will write a referral for their child.

57.     In Welch's previous positions, the physician usually sends an order or specific form indicating the type of therapy that the physician thinks the child needs.

58.     However, MLF provides physicians with the referral forms to complete.

59.     MLF provides these physicians referral forms with the boxes for the different types of therapy (speech, physical, and occupational) pre-checked, eliminating doctor discretion.

60.     As a result, many children are receiving more types of therapy than the children medically need.

61.     The physician referral form also includes a space to mark the child's primary language; this space is often left blank.

62.     Additionally, the referral forms contain the specific codes for the type of therapy to be provided.

63.      However, many MLF patients receive therapy unrelated to the ICD code.

64.     MLF bills extensive services to Nevada Medicaid. MLF bills approximately seventy percent of its services to Medicaid.

65.     The Medicaid program is funded by the federal government and the states. The federal government pays states for a specified percentage of the Medicaid program expenditures.

66.     Nevada Medicaid requires that services are medically necessary and require the management of a qualified therapist.

67.     MLF bills approximately twenty to twenty-five percent of its services to Tricare.

68.     Tricare benefits service members, present and past, and their families. Tricare is run substantially similar to Medicaid. The Tricare program is funded by the federal government.

69.     Before a provider can bill its therapy services to Medicaid, it must first obtain prior authorization.

70.     A specific form must be completed for these authorization requests.

71.     This form is also used for requests to continue services or to review already performed services.

72.     All prior authorization requests must be submitted online to HP Enterprise Services.

73.     MLF submits therapist's progress reports and notes as documentation for these authorization requests to Medicaid.

74.     Nevada Medicaid then releases MLF to complete a certain number of units/sessions to the patient.

75.     After prior authorization is issued, the billed services must match the approved authorization.

76.     Jonathan instructs all MLF therapists to avoid using certain language in Patient History section of their progress reports because in order to assure maximum payout from insurance companies. Jonathan tells therapists that they "are not required to put this information in [the forms], and the insurance companies are now using this to substantiate claim denial." Jonathan's examples of types of language to avoid include:

- She has been receiving speech therapy since November 2010

- He was initially assessed by the speech department in June 2010

8

- He has been receiving physical therapy services 1 time a week since May 2011

77.     MLF does not maintain a copy of Medicaid guidelines for therapists to access, nor does it reference the Medicaid guidelines in the documentation guidelines such as the employee handbook or memorandums.

***MLF's policy to treat every child, regardless of medical necessity***

78.     Ann Marie repeatedly reminds MLF therapists of its company policy: to treat every child that walks through the door, regardless of medical necessity or even proper medical authorization.

79.     Ann Marie dismisses any possibility that speech and language therapy is not appropriate for a child.

80.     Ann Marie also emphatically instructs MLF therapists to look for progress in all of MLF's patients and to continue to provide treatment regardless of the medical needs of the patient.

81.     Ann Marie tells therapists: "No Child NEVER makes NO PROGRESS.  It's an impossibility."

82.     Ann Marie accuses therapists of wanting to discharge children solely because of behavioral problems.

83.     On Defendants' website, they discuss the importance of the family's commitment to a child's progress to therapy, especially bringing children to therapy.

84.     However, Ann Marie instructs its therapists not to discharge a child because parents are not implementing the treatment plan at home.

85.     Defendants' motive is to generate as much revenue from Medicaid as possible, without regard to medical necessity or the real needs of the children.

86.     MLF directs its therapists to include in their progress reports a statement stating that family support is excellent and that the parents are following through with therapy at home.

87.     These progress reports are submitted to Medicaid to secure re-authorization of funding and are a precondition to funding.

88.     The statement about parental involvement, present in almost all progress reports, is false as many of the parents are not observing sessions, or present sufficient involvement to be aware of what to do at home to follow up at home.

89.     MLF purports to advocate children receiving quality therapy and also promotes strong parental involvement in a child's therapy.

90.     However, MLF demands that parents bring children to therapy, even when they are sick or falling asleep (and thus unable to fully participate in therapy).

91.     MLF also charges parents a fee if a parent cancels a therapy session with less than a twenty-four hour notice.

92.     Jonathan created the MLF Medical Necessity Form and requires that MLF staff in MLF's insurance department obtain signatures on the Medical Necessity Form from doctors' offices.

93.     Jonathan instructs all of MLF's insurance department staff to be sure all check boxes on the Medical Necessity Form are filled to be sure children receive all needed therapies.

94.     Using the Medical Necessity Forms, MLF began providing medically unnecessary occupational therapy and physical therapy services to children who came to MLF for speech therapy services.

95.     Jonathan and Ann Marie direct all of MLF's insurance department staff to ask therapists to change their evaluation reports if the recommended therapy frequency is listed for less than two or three sessions per week.

96.     Additionally, Jonathan and Ann Marie instruct all of MLF's insurance department staff to reprimand therapists who decrease the frequency of therapy in progress reports.

97.     On or about May 19, 2014, Ann Marie sent an email to Megan Gebhardt ("Gebhardt"), an MLF speech pathologist at the time, to express her unhappiness and dissatisfaction with the way Gebhardt "handled [K. G.], his progress, his progress report, and his discharge."

98.     Ann Marie's May 19, 2014 email clearly shows MLF's intentions to provide medically unnecessary treatment to patients. In her email, Ann Marie criticized Gebhardt for noting that K. G. had not made any progress and for discharging him. Anne Marie wrote:

When interviewed for a position at MLF, you were informed of our mission to help every child who comes through our door; no child is too low functioning for treatment and no child is too high functioning for treatment.  All children deserve help.  If a child has a need, we will help him or her.  We do not give-up on children.  You agreed that this too was you philosophy.

No child NEVER makes NO PROGRESS.  It's an impossibility.  Every child makes some progress with or without our intervention; it's a freebee.   Children grow and develop naturally.  To say that a child has made No Progress is simply untrue.

When you send a progress report like this to an insurance company, you are not only sabotaging this child's ability to get Speech Therapy now, you are also sabotaging this child's ability to get Speech Therapy in the future, as well as continued Occupational Therapy now and in the future.  It is not ethical to take away a child's ability to receive help and have a better life, because you personally can't/don't want to help him; someone else may.  ==Most insurance companies, after reading your inaccurate, simplistic, and negatively charged progress report for Kevin, would deny him all therapy services now and in the future.==  What if Kevin has a break-through, what if he gets past this stage in a few months, what if he gets medication that really changes things around for him, what if he does get ABA, and it works?  It won't matter, because he will not be able to come back to MLF, or anywhere else, for any type of therapy.  That has happened in the past, as I know I shared with you during your interview, and it is not fair to the child, and not acceptable to me, to be the cause of that.

(emphasis added).

99.     Ann Marie demanded that Gebhardt rewrite K. G.'s progress report "in-line with the mission of MLF." Ann Marie stated that MLF would not discharged K. G.

100.    MLF directs its therapists to recommend more therapy than is required for patients.

101.    On or about August 18, 2014, Jonathan sent an email to all MLF therapists, reminding them "to please put down the **highest number of recommended weekly visits**" for patients." Jonathan went on to write:

> In using the highest number, it offers the patient and the therapist, the flexibility to **increase** the Tx frequency (even if they aren't currently using the max number of visits per week authorized) should the treatment plan or frequency need to be adjusted later on. Please be sure to always put down a single digit recommendation for frequency of Tx (3x a week), rather than a range (recommended 2-3x wee). There is no benefit to a patient by putting a Tx frequency range on the report as the **insurance companies will almost always choose the lower number. Once a child's frequency has been reduced, it is almost impossible to increase it again** (even if it is desperately needed) unless there is another accident, illness, or injury that can be demonstrated. Also, **any recommendation of more than 3x a week is typically sent for medical review and may be denied if we are unable to justify medical necessity as a result of an accident, injury, or illness.**

(Emphasis added).

12

102.    MLF directs its therapists to certify that the therapists' recommendations are accurate and compliant with American Speech-Language-Hearing Association ("ASHA") professional standards.

103.    On or about March 10, 2015, Jonathan sent an email to all speech language pathologists, directing them to add specific language to their reports following their recommendation. The specific language states, "This recommendation is consistent with generally accepted ASHA professional standards." Since ASHA standards of care are not consistently followed at MLF related to evaluations and decision making, this is a falsified statement.

### Ineligible patients: Patients with developmental errors

104.    Developmental errors are those which a child has an approximately seventy-five percent chance of outgrowing without any therapy.

105.    Children develop articulation within predicable chronological age expectations.

106.    Ann Marie even acknowledges that children grow naturally, she says, "Every child makes some progress with or without intervention; it's a freebee.  Children grow and naturally."

107.    MLF instructs its therapists to offer therapy for children with developmental errors.

108.    For example, MLF assessed seven year old JP's[1] articulation as severely impaired because he had problems articulating the sounds "th" and "l."

109.    However, children usually develop these sounds around age eight and such articulation problems are not significantly atypical.

### Ineligible patients: Spanish-speaking patients

---

[1] Patient names are abbreviated to maintain confidentiality.

110.    Medicaid requires that providers render culturally and linguistically appropriate services.

111.    ASHA states that the process of learning a second language is not a language disorder.

112.    ASHA also advises speech-language pathologists to administer and interpret formal and informal assessment procedures to distinguish between communication differences and communication disorders.

113.    MLF frequently accepts Spanish-speaking children for speech therapy, without testing the children in both Spanish and English.

114.    Thus, MLF provides speech and language therapy for children who do not need such therapy; rather, as a result of this therapy, the children are learning English as a second language.

115.    For example, MLF admitted three siblings: Bl, Jo, and Mi H-R for speech and therapy treatment.

116.    Welch has observed Mrs. H-R, who is frequently well-dressed and in high heels, drop off her three children at MLF about two to three times a week.

117.    It is not uncommon for the children to complain that they have not been fed all day.

118.    MLF administered about 253 therapy sessions to Bl, about 225 therapy sessions to Jo, and about 324 therapy sessions to Mi.

119.    Welch has worked with Bl for almost a year and has also treated her siblings at different times.

120.     Bl's primary language is Spanish but has learned to speak English; she often helps translates for her other siblings.

121.     Though MLF stresses that parent involvement is essential, Mrs. H-R has never observed a single therapy session regarding Bl during the entire year.

122.     Rather than provide therapy to Spanish-speaking patients, MLF should properly assess the patients to determine whether such therapy is appropriate.

123.     To fully assess a Spanish-speaking patient, MLF should purchase certain assessment tools in Spanish and always require an interpreter or bilingual speech and language pathologist present during initial assessments.

124.     MLF does employ some interpreters and bilingual staff but these few individuals cannot adequately examine all Spanish-speaking patients during their initial evaluations.

125.     Welch has reviewed reports from many English-speaking therapists examine Spanish-speaking children without an interpreter present. English normed reference subtests were incomplete and inappropriate to verify the presence, absence, or severity of a disorder.

***Ineligible patients: too low-functioning***

126.     MLF often provides therapy to patients who lack the cognitive skills to participate and functionally benefit from the therapy.

127.     For example, TL is a seventeen year old male with severe cognitive delay, motor speech disorder, autism, and seizure disorder.

128.     Due to his medical condition, TL is not able to actively participate in speech and language therapy.

129.     TL's comprehension of simple single word vocabulary is below the two year old level.

130.    TL's condition was declining related to seizures and eventually TL had a seizure during therapy at MLF.

131.    After TL's seizure at MLF, TL's mother decided to discontinue treatment at MLF.

132.    MLF directs its therapists to reflect progress in low-functioning patients, like Luong.

133.    However, providing speech and language therapy to patients who would not obtain any benefit from such therapy is medically unnecessary.

134.    Progress reports that were drafted for TL six months apart, appear to be identical.

135.    The progress notes demonstrate that TL is not making any progress with the therapy yet MLF continues to direct its therapists to perform therapy.

136.    Another example is, D A-R, who has been attending MLF for almost three years.

137.    A-R lost her hearing at age three and was supposed to use a hearing aid in her ear.

138.    A-R's mother previously reported that A-R was deaf in her left ear and hears approximately 25% in her right ear.

139.    However, the hearing aid was often not worn to therapy, reported broken, or not turned on.

140.    The purpose of the therapy was to improve A-R's speech therapy but Welch was unable to provide therapy because A-R was unable to hear anything.

141.    Welch notified Blake of the issue.

142.    Blake told Welch that there was nothing she could do and that she had to continue providing therapy to the child, even though the child could not hear anything.

143.    Blake told Welch, "You know our policy," referring to MLF's policy that it treats all patients and that all patients make progress with therapy.

***Ineligible patients: too high-functioning***

144.    MLF also often provides therapy to patients who are too high-functioning for therapy and thus ineligible for such therapy.

145.    For example, KT is an honor roll student without any speech problems.

146.    Welch examined KT and noted that he scored a 95% in reading decoding comprehension at the sixth grade level; KT had just finished the fifth grade.

147.    KT also scored a 100% in articulation in functional conversation, narrative discourse, and reading.

148.    Welch informed KT's parents that his current performance does not reflect significant impairment.

149.    Another therapist reached the same assessment.

150.    Despite these examinations, progress reports claim that KT had weaknesses in semantics and pragmatics.

151.    Several short-term goals listed in the progress reports appeared to contradict each other.

***Unnecessarily extending treatment***

152.    MLF misleads parents into thinking that therapy is medically necessary forever and that therapy is a priority over all other prospective activities.

153.    In one case, MLF scheduled a child for therapy every single day of the week.

154.    MLF has administered over 733 sessions on this child.

155.    MLF has also discouraged the parent from letting this child attend school (despite the child being able to speak in sentences and greatly needing to socialize and learn from other children).

156.    By any standard, seven days of therapy a week is excessive and medically unnecessary.

157.    In other cases, therapists may recommend therapy only once or twice a week, but MLF demands that the children are scheduled for therapy four to five times a week.

158.    MLF professes to employ highly educated and experienced therapists to assist all children who need therapy.

159.    However, these highly educated and experienced personnel are not allowed to use their expertise in major clinical decision making processes.

160.    This would include determining actual clinical need for therapy, frequency of therapy, and when discharging a patient is clinically appropriate.

161.    It is a prejudged conclusion by management that any child who walks through the door needs therapy.

162.    MLF's policy strongly discourages therapists from discharging patient and thus extending treatment for patients.

163.    MLF directs its therapists to falsify progress reports because these reports are then submitted to Medicaid to obtain additional therapy sessions.

164.    In cases in which management disagrees with the therapist's recommendation, the therapist is at risk to be terminated and the child in question is assigned to a therapist who will create a document substantiating the necessity and positive prognosis for improvement.

165.    On May 22, 2014, in an e-mail to all employees, Ann Marie expressed her dissatisfaction with the progress reports.

166.    Ann Marie instructed therapists to exclude any information regarding a child's behavior problems from the progress reports.

167.    Ann Marie further instructed the therapists to focus on the progress that the child made, even if it is minimal.

168.    On May 14, 2014, Megan Gebhardt drafted a progress report for a patient noting that the patient was not making progress on any of his goals and recommending that MLF discharge the patient.

169.    A few days later, on May 29, 2014, Ann Marie sent an e-mail to Gebhardt admonishing her progress report.

170.    Ann Marie directed Gebhardt to alter the progress report and told the Gebhardt that she would be personally reviewing the reports.

171.    In response to Ann Marie's instructions, Gebhardt altered the progress report for that same patient; this time noting that the patient was making progress on his goals and recommending that the patient continue receiving therapy.

172.    Another example is the case of LCB.

173.    A bilingual contract speech pathologist Ceilia Vizon evaluated LCB on July 16, 2012.

174.    Though LCB has ADHD (attention deficit, hyperactivity disorder), Vizon's assessment found that LCB had normal articulation and language skills and thus did not recommend any therapy.

175.    Shortly thereafter, MLF discontinued its contract with Vizon.

19

176.     A few months later, on February 5, 2013, an English-speaking (not bilingual) MLF speech and language pathologist evaluated LCB.

177.     This therapist diagnosed LCB with a lisp and language problems and recommended speech and occupational therapy for LCB.

178.     A few months later, MLF transitioned LCB to Welch's case load.

179.     Welch examined LCB on April 13, 2014 and found that LCB displayed no lisp or language problems.

180.     Welch found that LCB spoke both Spanish and English fluently and was exhibiting age appropriate language comprehension and formulation.

181.     MLF has administered over 130 sessions of therapy to LCB.

182.     Though Welch would like to discharge LCB, she knows that her job would be in jeopardy if she attempted to do so.

183.     When therapists attempt to discharge patients, Defendants respond by reprimanding the therapists; and in many cases, terminating the therapists.

184.     Additionally, all potential discharges must be reviewed by Blake, a clinically unlicensed administrative employee, whom MLF tasks to render clinical judgments.


*Billing Patients After Termination of Care*

185.     Patient H.W. received physical therapy at MLF through in or about May 2015.

186.     Patient H.W. is a Tricare beneficiary.

187.     Patient H.W. ended his physical therapy care at MLF in or about May 2015, when MLF notified all physical therapy patients that MLF planned to "scale back [its] PT department" because the PT department had been "losing money (a lot of money), for quite a while."

20

188.    After H.W. terminated his care at MLF, MLF continued to improperly bill Tricare for at least thirteen physical therapy visits, none of which H.W. was scheduled to attend.

***Upcoding and Medically Unnecessary Occupational Therapy and Physical Therapy***

189.    MLF directs its therapists to bill Medicaid using only a single billing code every time, 97530, regardless of the services provided to the patients.

190.    MLF directs its therapists to provide therapy to all patients, regardless of their needs.

191.    MLF does not allow therapists to discharge patients. Instead, Ann Marie and Jonathan, insist that therapists continue to provide therapy to patients and change the patients' progress reports to note that continued therapy is required for the patients.

192.    Ann Marie and Jonathan improperly interfere with the therapists' care of patients when they do not allow therapists to determine the care for the patients, and instead require therapists to bill all services under billing code 97530.

193.    Ann Marie and Jonathan improperly interfere with the therapists' care of patients when they do not allow therapists to determine the plan of care for the patients, and instead require therapists to provide continued therapy to patients regardless of the patients' needs.

194.    Ann Marie sent an email to all MLF therapists, to notify them of MLF's decision to "simplify [its] billing procedures" by getting "rid of redundant billing codes . . . and simply bill under the billing code that encompasses all of the OT and PT treatment provided."

195.    In her email to all MLF therapists, Ann Marie continued, "Everything that we, as pediatric therapists do at MLF, is done during Therapeutic Activities, which is billing code 97530. The definition of billing code 97530 is, **'Therapeutic Activities: Direct (one-on-one)**

**patient contact, by the provider (using dynamic activities to improve functional**

**performance), each unit being 15 minutes.'**" (emphasis in original).

196.   In her email to all MLF therapists, Ann Marie went on to write:

There is simply nothing that we do, that is not direct one-on-one contact using dynamic activities to improve the functional performance of the children we treat. That is what we do with each and every patient, each and every day. Some insurance companies are starting to do away with the use of codes entirely, as it is more cost effective for them to simply reimburse the amount of time a patient is seen, than waste hundreds of thousands of dollars on administrative staff to assess which codes were used and to input all of that information, so with some of our patients it really hasn't mattered for some time anyway, because they are not using any codes anymore even though we've been wasting our time entering them. We would like to follow this current trend to decrease medical spending and medical overhead, as the APTA is in support of, and is campaigning to chance across the board. Currently we are supporting two full-time administrative employees for every one therapist, and we simply cannot afford to continue hiring two administrative personnel for every therapist that we hire – it's just not cost effective and we don't have the room to house much more admin. staff. We feel that this simplification will be a step in the right direction, and will move us toward the global change in billing that is occurring across the country. We will continue to bill as we have been, for the next week, and will use that time to address any questions or concerns that any of you might have regarding this charge.

*a. Witness Jane Doe[2]*

197.   Witness Jane Doe ("Doe") is a former employee of MLF, where she worked for

approximately three years as a physical therapist.

198.   During her employment with MLF, MLF directed Doe and other therapists to use

the same billing code regardless of the services rendered.

199.   MLF instructed Doe to recommend multiple therapy sessions for patients

regardless of the diagnoses or progress of the patients.

200.   MLF did not allow Doe to discharge patients, and required  continued therapy

regardless of progress or any other factors.

---

[2] Jane Doe is an alias for the name of the witness.

201.   Doe met with Jonathan, on behalf of MLF therapists who were not willing to comply with MLF's policy to bill all services using one billing code, to inform him that MLF's mandate to universally use one billing code was illegal and unethical.

202.   In or about May 2015, Ann Marie gave Doe an ultimatum in an email: follow instructions to use a singular billing code for all services rendered or be terminated.

203.   In her email to Doe, Ann Marie wrote:

You have showed a complete lack of respect for both me and Jon[athan], implying that we are not smart enough or ethical enough to understand our legal and ethical obligations. You have also showed a lack of respect for your fellow experienced (non-new graduate) physical therapists at MLF (all of whom have been billing correctly under the most appropriate billing code – 97530 – for their entire length of employment at MLF, without any input from us). Worst of all, you again smacked us in the face with the biggest reason we initially opted NOT to hire new graduates – naivety, a lack of knowledge and understanding of the, "*business*," of PT, and an internal drive to, "prove yourselves," *by fighting* the system, instead of working *with* the system.

The information you supplied us from the APTA, although almost a decade outdated, that you highlighted in your defense of your desire to **continue to under-bill for your services**, and cause a continued **$300,000.00 annual loss for MLF**, stated that you, "Should promote practice environments that support autonomous and accountable professional judgements,"  We have done nothing but support your professional judgement and have always allowed you to be autonomous in all of your professional decision-making regarding the provision of therapy, but if you feel that we have not, and do not want to support our practice environment any longer, then that is your choice; you have the freedom to work anywhere you want – we are not holding you here. You also highlighted that you, "Need to be aware of charges and shall ensure that documentation and **coding for PT reflect the nature and extent of the services provided**." You *are* aware (as I have just made you aware) that your services will be henceforth billed under 97530, as soon as this new billing process goes into effect, because the only thing you are to be working on at **MLF *is* functional performance** – if you are working on anything that does not fall under the heading of functional performance, then you are *not* doing what you were hired to do.

. . .

The current system of billing at MLF, **is costing us approximately $300,000.00 in administrative staff time, and lost income due to under-billing for our services, every year**!!!! OMG! That is an unbelievable enormous amount of money to two people who make very little profit, for running such a time consuming and emotionally draining business with almost 100 employees! **We could do so much for our company and**

23

ourselves, with that lost revenue! Currently we are billing under several different codes, which could all be billed *appropriately and accurately* under one code, saving about 80 hours of administrative work per week, and ceasing the continued loss of over $200,000.00 of lost revenue due to under-billing every tear! For the insurance companies who have not yet switched over to a per-visit or pay-for-time contract, the reimbursement for 97530 is significantly greater in most instances, than 97112, 97110, and 97116, as it is considered a higher skilled service. It is all encompassing, and it pays more – it is the obvious choice.

. . .

This policy change is right for our business and is right for your profession. If you do not agree, are the least bit hesitant about making the change, are questioning our integrity, intelligence and/or ethics even slightly, we prefer to part ways than have someone on our team, who is not *truly* on our team.

(emphasis added).

204.    In response to MLF's ultimatum, Doe responded that she was not in agreement with MLF's billing mandate, and she provided documentation to the American Physical Therapy Association ("APPA") to support her position.

205.    Doe also reported MLF's practices to the State of Nevada Board of Physical Therapy Examiners.

206.    On or about May 7, 2015, the State of Nevada Board of Physical Therapy Examiners ("the Board") sent a warning letter to MLF about its practice to bill all services rendered using the billing code 97530.

207.    The May 7, 2015 letter warned MLF that "[a]lthough a staff member may be responsible for performing the billing, the therapist is legally responsible for what occurs with the patient and what is billed. **While it may be easier to utilize one code in the office, doing so places the licensees in jeopardy of violating several provisions of the practice act and facing disciplinary action**." (emphasis added).

208.    The May 7, 2015 letter warned MLF that Ann Marie's mandate that all therapists bill for services rendered using a singular billing code of 97530 is inappropriate. The Board's letter states:

> Per the communication from Ann Marie Gottlieb: *there are documents that "help support this change in our billing procedure, and explain how and why all of your sessions can, and should, be billed under 97530".*
>
> The therapist has the determination on what is clinically indicated and what should be billed.  The employer cannot limit what treatments are performed as it is the sole responsibility of the licensee to determine the care of his or her patients. The licensee treats within his or her scope of practice, based on the needs of the patient. If the employment contract limits the activity of the therapists to certain treatments and/or activities, then the therapist would be bound to practice within those limitations, however the billing and coding remain in control of the therapist.
>
> The APTA has proposed to reform payment for outpatient physical therapy services, however this proposal is not finalized, nor have any changes been implemented. An idea of a professional association does not supersede the laws of a licensing board.

209.    The May 7, 2015 letter warned MLF that portions of its policy on billing are incorrect.

210.    The May 7, 2015 letter warned MLF that "the Board would entertain a complaint for 'practice of physical therapy without a license' if any person is alleged to be making any decisions about the plan of care of a patient and/or the billing of such treatments."

211.    Despite the Board's warnings, MLF continued to override specialists' treatment terms and overbilled insurance companies.

212.    On or about May 6, 2015, MLF terminated Doe's employment when she refused to use the same billing code every time, no matter what the patient's treatment was. On or about May 6, 2015, Ann Marie sent a termination letter to Doe, which states in part:

25

Again, I feel that your pride and stubbornness has blinded you from truly, "hearing," what you are being told.  This is the exact reason we put everything in writing and asked the same of you, so that even though you are too arrogant to, "hear," what we are actually saying, anyone else who reads our correspondence will see the facts, and not your self-righteous false interpretation.

Your refusal to do the job you were hired for (provide one-on-one dynamic therapy that improves the functional performance of our patients), along with your relentless head-butting with us, your threats and accusations against our company, your inability to see all ages of pediatric patients we provide services to (after almost 3 years on the job), and your audacious and arrogant actions in telling one of your peers that she did not have to come to work, without prior approval, or any sort of notification to us whatsoever, telling her that *you* would, "*handle it*," are the reasons we are letting you go.   You have grossly overstepped your professional boundaries at My Left Foot Children's Therapy, and do not seem to understand who is working for whom.

Your employment with My Left Foot Children's Therapy is terminated.

### b. Witness Jane Smith[3]

213.    Witness Jane Smith ("Smith") is a former employee of MLF, where she worked for approximately three years as a registered occupational therapist ("OTR").

214.     Smith witnessed Jonathan and Ann Marie repeatedly insist that therapists use the same billing code, CPT 97530, regardless of the services rendered.

215.    Jonathan and Ann Marie direct therapists, including Smith, to use the billing code 97530, regardless of the services rendered. This code is not always technically or ethically accurate.

216.    CPT code 97530  is for functional activities and is one of the highest reimbursable codes. Functional activities involve mental exercises such as putting together a puzzle or making crafts to improve patients' fine motor skills. However, the services Smith provided to patients were not limited to functional activities. Smith also worked on passive range of motion and strengthening, and it is improper to bill these services under the billing code 97530.

217.    There are additional CPT codes that occupational therapists use in coding treatment procedures.

---

[3] Jane Smith is an alias for the name of the witness.

218.     The following additional CPT codes and descriptors for occupational therapy are also considered appropriate within a plan of care and service delivery implementation in intervention with the pediatric population:

   a.  97110  Therapeutic Procedure, one or more areas; each 15 minutes; therapeutic exercise to develop strength, endurance, range or motion, and flexibility.
   b.  97112—Neuromuscular reeducation of movement, balance, coordination, kinesthetic sense, posture, and/or proprioception for sitting and/or standing activities
   c.  97532---Development of cognitive skills to improve attention, memory, problem solving, (includes compensatory training) direct one-to one contact by the provider; each 15 minutes
   d.  97533---Sensory Integrative techniques to enhance sensory processing and promote adaptive responses to environmental demands, direct one to one member contact by the provider; each 15 minutes
   e.  97535---Self-care/home management training (eg. Activities of daily living (ADL) and compensatory training, safety procedures, use of assistive technology , devices, or adaptive equipment) direct one to one contact by provider, each/15 minutes.

219.     A licensed therapist is responsible for accurately reporting coding procedures based on actual patient need and response to the treatment process.

220.     After the Nevada Physical Therapy Board sent a warning letter to MLF on or about May 7, 2015, Jonathan had a meeting with the therapists at MLF.

221.     MLF's stated reason for terminating Smith's employment is alleged failure to comply with an attendance policy, which MLF had not announced at the time it terminated Smith's employment, but selectively enforced against Smith retroactively.

222.     Smith believes that MLF's stated reason for her termination is pretextual, and the real reason for her termination is her refusal to bill all of her treatment under the billing code 97530.

### c. Witness Jane Jones[4]

---

[4] Jane Jones is an alias for the name of the witness.

223.     Witness Jane Jones ("Jones") is a former employee of MLF, where she worked for approximately nine months as a registered physical therapist.

224.     MLF directed therapists, including Jones, to use the billing code 97530, regardless of the services rendered. This code is for functional activities and is not always appropriate.

225.     Jones administered functional therapeutic activities along with other activities that did not qualify as functional therapy, such an neuromuscular functions, balance, and strengthening. Nevertheless, MLF directed Jones to bill all services rendered using one single billing code.

226.     Additionally, Jones is aware that MLF requires therapists that provide aquatic therapy to also bill for services using the same improper billing code, 97530, and are not allowed to bill under the proper code.

227.     MLF instructs therapists to bill for all services rendered using billing code 97530 because by using any other billing code, the therapists would cause MLF to lose money.

228.     During her tenure at MLF, MLF instructed Jones to recommend treatment for every patient, whether the patient needed the treatment or not.

229.     On one occasion, Jones evaluated a patient and concluded that the patient did not need therapy. After that, Jonathan sat Jones down and told her that MLF always recommends treatment for patients, no matter what. Jonathan also had a different therapist evaluate the same patient, and the therapist gave the patient a treatment plan.

230.     While working at MLF, Jones believed that Jonathan and Ann Marie tried to prevent therapists from communicating with one another. MLF employees did not know one

another's last names. Additionally, MLF changed its billing sheet system to identify therapists

only by their first name and last initial. MLF does not have a company directory.

231.    MLF laid Jones off along with a number of other therapists. MLF's stated reason

for the layoffs was that it was changing the types of services it provided.

232.    At the end of a work day, Jones was suddenly unable to use her computer login

credentials. When she got home the same day, at approximately 9:00 pm, she received an email

from MLF, notifying her that she had been laid off.

233.    Jones believes that MLF's stated reason for the layoffs is pretextual, and that

MLF terminated her employment because she refused to bill all of the services she provided

under the billing code 97530.

### Count I
### Violation of The False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### (against Defendant My Left Foot Children's Therapy, LLC)

234.    Welch re-alleges and incorporates the allegations set forth above as though fully

alleged herein.

235.    The False Claims Act imposes liability on any person who knowingly presents or

causes to be presented, a false or fraudulent claim for payment or approval.  31 U.S.C. §

3729(a)(1)(A).

236.    The Medicaid program is funded by the federal government and the states. The

federal government pays Nevada for a specified percentage of the Medicaid program

expenditures.

237.     Tricare benefits service members, present and past, and their families. Tricare is run substantially similar to Medicaid. The Tricare program is funded by the federal government.

238.     The Nevada Medicaid State Plan implicates the False Claims Act because the Nevada Medicaid program is funded at least in part by the federal government. Federal dollars are at stake in Medicaid reimbursement. Complying with the Nevada Medicaid State Plan is important for the False Claims Act.

239.     The Nevada Medicaid State Plan mandates that physical therapy is services provided by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified physical therapist to ameliorate/improve neuromuscular, musculoskeletal and cardiopulmonary disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.a.

240.     The Nevada Medicaid State Plan mandates occupational therapy is services prescribed by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified occupational therapist to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.b.

241.     The Nevada Medicaid State Plan mandates that speech and language therapy be provided to a recipient to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predictable time period and

that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.c. MLF, by and through its officers, agents, supervisors, and employees, knowingly presented or caused to be presented claims to obtain payment for medically unnecessary services and overbilled services.

242.   Even though a relator is not required to identify every conceivable detail of a fraud to satisfy Rule 9(b) and then, even if specific false claims were not alleged, Relator need only allege sufficient indicia of reliability, Relator in this case has in fact alleged the who, what, where, when, how, why of the fraud alleged in this Count:

    a.   Who – MLF and its officers, agents, supervisors and employees.

    b.   What – MLF regularly provides therapy to patients who are ineligible for speech and language therapy, such as patients with developmental errors, Spanish-speaking patients who have no diagnostically confirmed speech and language problems, patients who are too medically or cognitively impaired to benefit from therapy, and patients who no longer demonstrate functional impairment.  MLF also unnecessary extends treatment for patients by mandating that therapists draft progress reports to show that patients needed more therapy – when in many cases more therapy is not medically necessary. MLF demands that its occupational and physical therapists provide therapy to patients regardless of the patients' needs, and does not allow therapists to discharge patients. MLF demands that therapists bill for services rendered using a singular billing code 97530, regardless of the services.

    c.   Where – MLF is located in Las Vegas, Nevada.

31

d.   When – Welch noticed the fraudulent activity when she started working at MLF in September 2013, however it is likely that the fraud began several years prior. The fraudulent activity continues to the present, as evidence by Ann Marie Gottlieb's May 2015 letter to witness Jane Doe.

e.   Why – To generate as much revenue from Medicaid as possible, without regard to proper billing procedures, medical necessity or the real needs of the children. To support claims submitted to bolster medical necessity.

f.   How – MLF provides medically unnecessary services by promoting a policy of treating every child, regardless of the child's medical needs.  MLF also maintains a policy that all children make progress when receiving therapy. MLF directs its therapists to certify that their recommendations are accurate and compliant with American Speech-Language-Hearing Association ("ASHA") professional standards.   MLF disciplines therapists who seek to discharge patients from therapy.  MLF demands that therapists bill for services rendered using a singular billing code 97530, regardless of the services. MLF management insert its own opinion regarding the care of patients and overrides the opinions of the therapists which are based on patients' needs and deficits, in order to maximize its reimbursement from insurance companies.

243.   The result of MLF's actions has led to the federal government and the State of Nevada to pay for medically unnecessary services, and paying for more expensive services than necessary.

244.    The United States of America and the State of Nevada have been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws and regulations in an as of yet undetermined amount.

## Count II
### Violation of The False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### (against Defendant Ann Marie Gottlieb)

245.    Welch re-alleges and incorporates the allegations set forth above as though fully alleged herein.

246.    The False Claims Act imposes liability on any person who knowingly presents or causes to be presented, a false or fraudulent claim for payment or approval.  31 U.S.C. § 3729(a)(1)(A).

247.    The Medicaid program is funded by the federal government and the states. The federal government pays Nevada for a specified percentage of the Medicaid program expenditures.

248.    Tricare benefits service members, present and past, and their families. Tricare is run substantially similar to Medicaid. The Tricare program is funded by the federal government.

249.    The Nevada Medicaid State Plan implicates the False Claims Act because the Nevada Medicaid program is funded at least in part by the federal government. Federal dollars are at stake in Medicaid reimbursement. Complying with the Nevada Medicaid State Plan is important for the False Claims Act.

250.    The Nevada Medicaid State Plan mandates that physical therapy is services provided by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified physical therapist to ameliorate/improve neuromuscular, musculoskeletal and cardiopulmonary

disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity. *See* The Nevada Medicaid State Plan at §11.a.

251.    The Nevada Medicaid State Plan mandates occupational therapy is services prescribed by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified occupational therapist to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity. *See* The Nevada Medicaid State Plan at §11.b.

252.    The Nevada Medicaid State Plan mandates that speech and language therapy be provided to a recipient to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predictable time period and that such therapy is based on medical necessity. *See* The Nevada Medicaid State Plan at §11.c.

253.    Ann Marie Gottlieb knowingly presents or causes to be presented claims to obtain payment for medically unnecessary services and overbilled services.

254.    Ann Marie Gottlieb had knowledge of the ongoing fraudulent billing practices based on the State of Nevada Board of Physical Therapy Examiners' ("the Board") May 7, 2015 letter to MLF, and prior to any employee complaints regarding MLF's billing practices.

255.    Even though a relator is not required to identify every conceivable detail of a fraud to satisfy Rule 9(b) and then, even if specific false claims were not alleged, Relator need only allege sufficient indicia of reliability, Relator in this case has in fact alleged the who, what, where, when, how, why of the fraud alleged in this Count:

a.  Who – Ann Marie Gottlieb, co-owner of MLF.

b.  What –Ann Marie regularly directs therapists to provide therapy to patients who were ineligible for speech and language therapy, such as patients with developmental errors, Spanish-speaking patients who have no diagnostically confirmed speech and language problems, patients who are too medically or cognitively impaired to benefit from therapy, and patients who no longer demonstrate functional impairment. Additionally, Ann Marie strongly discourages therapists from discharging patients and encourages therapists to unnecessarily extend treatment for patients when more therapy is not medically necessary.  Ann Marie implements MLF's policies and practices by directing the occupational and physical therapists to provide therapy to patients regardless of the patients' needs, and rejecting discharge of patients. Ann Marie implements MLF's policies and practices by demanding that occupational and physical therapists bill for services rendered using a singular billing code, r7530, regardless of the services rendered.

c.  Where – Ann Marie lives in Las Vegas, Nevada.

d.  When – Welch noticed the fraudulent activity when she started working at MLF in September 2013, however it is likely that the fraud began several years prior. The fraudulent activity continues to the present, as evidence by Ann Marie Gottlieb's May 2015 letter to witness Jane Doe.

e.  Why – To generate as much revenue from Medicaid as possible, without regard to proper billing procedures, medical necessity or the real needs of the children. To support claims submitted to bolster medical necessity.

f.   How – Ann Marie drafts memos to therapists which outline MLF's policy: to treat every child that walks through the door, regardless of medical necessity or even proper medical authorization.  In Ann Marie's memos, she dismisses any possibility that speech and language therapy is not appropriate for a child.  Ann Marie also emphatically instructs MLF therapists to look for progress in all of MLF's patients and to continue to provide treatment regardless of the medical needs of the patient.  Ann Marie tells therapists: "No Child NEVER makes NO PROGRESS.  It's an impossibility."  Ann Marie also monitors and reviews progress reports drafted by therapists. Ann Marie promotes MLF's policy of occupational and physical therapists billing all services under a singular billing code, 97530, regardless of the services rendered. MLF management insert its own opinion regarding the care of patients and overrides the opinions of the therapists which are based on patients' needs and deficits, in order to maximize its reimbursement from insurance companies.

256.   The result of Ann Marie Gottlieb's actions has led to the federal government and the State of Nevada to pay for medically unnecessary services, and paying for more expensive services than necessary.

257.   The United States of America and the State of Nevada have been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws and regulations in an as of yet undetermined amount.

**Count III**
**Violation of The False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**
**(against Defendant Jonathan Gottlieb)**

258. Welch re-alleges and incorporates the allegations set forth above as though fully alleged herein.

259. The False Claims Act imposes liability on any person who knowingly presents or causes to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

260. The Medicaid program is funded by the federal government and the states. The federal government pays Nevada for a specified percentage of the Medicaid program expenditures.

261. Tricare benefits service members, present and past, and their families. Tricare is run substantially similar to Medicaid. The Tricare program is funded by the federal government.

262. The Nevada Medicaid State Plan implicates the False Claims Act because the Nevada Medicaid program is funded at least in part by the federal government. Federal dollars are at stake in Medicaid reimbursement. Complying with the Nevada Medicaid State Plan is important for the False Claims Act.

263. The Nevada Medicaid State Plan mandates that physical therapy is services provided by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified physical therapist to ameliorate/improve neuromuscular, musculoskeletal and cardiopulmonary disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity. *See* The Nevada Medicaid State Plan at §11.a.

264. The Nevada Medicaid State Plan mandates occupational therapy is services prescribed by a physician or other licensed practitioner of the healing arts within the scope of

practice under state law and provided to a recipient by or under the direction of a qualified

occupational therapist to ameliorate/improve functional disabilities which can respond or

improve as a result of the prescribed treatment plan in a reasonable, predicable period of time,

and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at

§11.b.

265.    The Nevada Medicaid State Plan mandates that speech and language therapy be

provided to a recipient to ameliorate/improve functional disabilities which can respond or

improve as a result of the prescribed treatment plan in a reasonable, predictable time period and

that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.c.

266.    Jonathan Gottlieb, knowingly presents or causes to be presented claims to obtain

payment for medically unnecessary services, and overbilled services.

267.    Jonathan Gottlieb had knowledge of the ongoing fraudulent billing practices

based on the State of Nevada Board of Physical Therapy Examiners' ("the Board") May 7, 2015

letter to MLF, and prior to any employee complaints regarding MLF's billing practices.

268.    Even though a relator is not required to identify every conceivable detail of a

fraud to satisfy Rule 9(b) and then, even if specific false claims were not alleged, Relator need

only allege sufficient indicia of reliability, Relator in this case has in fact alleged the who, what,

where, when, how, why of the fraud alleged in this Count:

      a.    Who – Jonathan Gottlieb, co-owner of MLF.

      b.    What – Jonathan is responsible for day-to-day operations at MLF.  Jonathan

          implements MLF's policies and practices of providing therapy to patients who

          were ineligible for speech and language therapy, such as patients with

          developmental errors, Spanish-speaking patients who have no diagnostically

confirmed speech and language problems, patients who are too medically or cognitively impaired to benefit from therapy, and patients who no longer demonstrate functional impairment. Jonathan also strongly discourages therapists from discharging patients and encourages therapists to unnecessarily extend treatment for patients when such therapy is not medically necessary. Jonathan implements MLF's policies and practices of demanding that occupational and physical therapists provide therapy to patients regardless of the patients' needs, and rejecting discharge of patients. Jonathan implements MLF's policies and practices of demanding that occupational and physical therapists bill for services rendered using a singular billing, 97530, regardless of the services rendered.

c. Where – Jonathan Gottlieb lives in Las Vegas, Nevada.

d. When – Welch noticed the fraudulent activity when she started working at MLF in September 2013, however it is likely that the fraud began several years prior. The fraudulent activity continues to the present, as evidence by Ann Marie Gottlieb's May 2015 letter to witness Jane Doe.

e. Why – To generate as much revenue from Medicaid as possible, without regard to proper billing procedures, medical necessity or the real needs of the children. To support claims submitted to bolster medical necessity.

f. How – Jonathan, by managing the day-today operations of MLF, promotes the policy of treating every child, regardless of the child's medical needs as well as the policy to unnecessary extend therapy for patients. Jonathan's August 18, 2014 email directing therapists to "put down the highest number of

recommended visits weekly for patients." Jonathan's March 10, 2015 email to therapists to certify that their recommendations are accurate and compliant with American Speech-Language-Hearing Association ("ASHA") professional standards.  Jonathan promotes the policy of occupational and physical therapists billing all services using a singular billing code, 97530, regardless of the services rendered. MLF management insert its own opinion regarding the care of patients and overrides the opinions of the therapists which are based on patients' needs and deficits, in order to maximize its reimbursement from insurance companies.

269.     The result of Jonathan Gottlieb's actions has led to the federal government and the State of Nevada to pay for medically unnecessary services, and paying for more expensive services than necessary. The United States of America and the State of Nevada have been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws and regulations in an as of yet undetermined amount.

<u>**Count IV**</u>
**Violation of The False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**(against Defendant My Left Foot Children's Therapy, LLC)**

270.     Welch re-alleges and incorporates the allegations set forth above as though fully alleged herein.

271.     The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.  31 U.S.C. § 3729(a)(1)(B).

40

272.    The Medicaid program is funded by the federal government and the states. The federal government pays Nevada for a specified percentage of the Medicaid program expenditures.

273.    Tricare benefits service members, present and past, and their families. Tricare is run substantially similar to Medicaid. The Tricare program is funded by the federal government.

274.    The Nevada Medicaid State Plan implicates the False Claims Act because the Nevada Medicaid program is funded at least in part by the federal government. Federal dollars are at stake in Medicaid reimbursement. Complying with the Nevada Medicaid State Plan is important for the False Claims Act.

275.    The Nevada Medicaid State Plan mandates that physical therapy is services provided by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified physical therapist to ameliorate/improve neuromuscular, musculoskeletal and cardiopulmonary disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.a.

276.    The Nevada Medicaid State Plan mandates occupational therapy is services prescribed by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified occupational therapist to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.b.

41

277.   The Nevada Medicaid State Plan mandates that speech and language therapy be provided to a recipient to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predictable time period and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.c.

278.   MLF, by and through its officers, agents, supervisors, and employees, knowingly makes or causes to be made a false record or statement to a false claim when it certifies to Nevada Medicaid that it is performing medically necessary therapy and properly billing for the services.

279.   MLF had knowledge of the ongoing fraudulent billing practices based on the State of Nevada Board of Physical Therapy Examiners' ("the Board") May 7, 2015 letter to MLF, and prior to any employee complaints regarding MLF's billing practices.

280.   Even though a relator is not required to identify every conceivable detail of a fraud to satisfy Rule 9(b) and then, even if specific false claims were not alleged, Relator need only allege sufficient indicia of reliability, Relator in this case has in fact alleged the who, what, where, when, how, why of the fraud alleged in this Count:

      a.   Who – MLF and its officers, agents, supervisors and employees.

      b.   What – MLF directs its therapists to falsify progress reports to ensure that the reports will support authorization for more therapy billed to Medicaid.  MLF directs physical and occupational therapists to bill every therapy session using the billing for 97530, regardless of the services rendered.

      c.   Where – MLF is located in Las Vegas, Nevada.

      d.   When – Welch noticed the fraudulent activity when she started working at MLF in September 2013, however it is likely that the fraud began several

42

years prior. The fraudulent activity continues to the present, as evidence by Ann Marie Gottlieb's May 2015 letter to witness Jane Doe.

e.   Why – To generate as much revenue from Medicaid as possible, without regard to proper billing procedures, medical necessity or the real needs of the children. To support claims submitted to bolster medical necessity.

f.   How – MLF monitors and reviews progress reports to ensure that the reports support the authorization of more therapy.  If the report does not support more therapy, MLF will direct the therapist to alter the report or it will discipline the therapist.  MLF directs its therapists to certify that their recommendations are accurate and compliant with American Speech-Language-Hearing Association ("ASHA") professional standards.   MLF directs therapists to bill for all services rendered using the billing code 97530, claiming that doing so would save MLF money. MLF management insert its own opinion regarding the care of patients and overrides the opinions of the therapists which are based on patients' needs and deficits, in order to maximize its reimbursement from insurance companies.

281.   The result of MLF's actions has led to the federal government and the State of Nevada to pay for medically unnecessary services, and paying for more expensive services than necessary.

282.   The United States of America and the State of Nevada have been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws and regulations in an as of yet undetermined amount.

**Count V**
**Violation of The False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**

43

**(against Defendant Ann Marie Gottlieb)**

283.    Welch re-alleges and incorporates the allegations set forth above as though fully alleged herein.

284.    The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.  31 U.S.C. § 3729(a)(1)(B).

285.    The Medicaid program is funded by the federal government and the states. The federal government pays Nevada for a specified percentage of the Medicaid program expenditures.

286.    Tricare benefits service members, present and past, and their families. Tricare is run substantially similar to Medicaid. The Tricare program is funded by the federal government.

287.    The Nevada Medicaid State Plan implicates the False Claims Act because the Nevada Medicaid program is funded at least in part by the federal government. Federal dollars are at stake in Medicaid reimbursement. Complying with the Nevada Medicaid State Plan is important for the False Claims Act.

288.    The Nevada Medicaid State Plan mandates that physical therapy is services provided by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified physical therapist to ameliorate/improve neuromuscular, musculoskeletal and cardiopulmonary disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.a.

289.    The Nevada Medicaid State Plan mandates occupational therapy is services prescribed by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified occupational therapist to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.b.

290.    The Nevada Medicaid State Plan mandates that speech and language therapy be provided to a recipient to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predictable time period and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.c.

291.    Ann Marie Gottlieb knowingly makes or causes to be made a false record or statement to a false claim when she certifies to Nevada Medicaid that MLF is performing medically necessary therapy and properly billing for the services.

292.    Ann Marie Gottlieb had knowledge of the ongoing fraudulent billing practices based on the State of Nevada Board of Physical Therapy Examiners' ("the Board") May 7, 2015 letter to MLF, and prior to any employee complaints regarding MLF's billing practices.

293.    Even though a relator is not required to identify every conceivable detail of a fraud to satisfy Rule 9(b) and then, even if specific false claims were not alleged, Relator need only allege sufficient indicia of reliability, Relator in this case has in fact alleged the who, what, where, when, how, why of the fraud alleged in this Count:

 a.    Who – Ann Marie Gottlieb, co-owner of MLF.

b. What – Ann Marie directs therapist to falsify progress reports to ensure that the reports will support authorization for more therapy billed to Medicaid. Ann Marie directs therapists to bill their services under the billing code 97530, regardless of the services rendered.

c. Where – MLF is located in Las Vegas, Nevada.

d. When – Welch noticed the fraudulent activity when she started working at MLF in September 2013, however it is likely that the fraud began several years prior. The fraudulent activity continues to the present, as evidence by Ann Marie Gottlieb's May 2015 letter to witness Jane Doe.

e. Why – To generate as much revenue from Medicaid as possible, without regard to proper billing procedures, medical necessity or the real needs of the children. To support claims submitted to bolster medical necessity.

f. How – Ann Marie monitors and reviews progress reports to ensure that the reports support the authorization of more therapy.  If not the report does not support more therapy, Ann Marie will direct the therapist to alter the report or it will discipline the therapist.  Ann Marie directs therapists to bill their services under the billing code 97530, regardless of the services rendered. MLF management insert its own opinion regarding the care of patients and overrides the opinions of the therapists which are based on patients' needs and deficits, in order to maximize its reimbursement from insurance companies.

294.    The result of Ann Marie's actions has led to the federal government and the State of Nevada to pay for medically unnecessary services, and paying for more expensive services than necessary.

295.    The United States of America and the State of Nevada have been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws and regulations in an as of yet undetermined amount.

**Count VI**
**Violation of The False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**(against Defendant Jonathan Gottlieb)**

296.    Welch re-alleges and incorporates the allegations set forth above as though fully alleged herein.

297.    The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.  31 U.S.C. § 3729(a)(1)(B).

298.    The Medicaid program is funded by the federal government and the states. The federal government pays Nevada for a specified percentage of the Medicaid program expenditures.

299.    Tricare benefits service members, present and past, and their families. Tricare is run substantially similar to Medicaid. The Tricare program is funded by the federal government.

300.    The Nevada Medicaid State Plan implicates the False Claims Act because the Nevada Medicaid program is funded at least in part by the federal government. Federal dollars are at stake in Medicaid reimbursement. Complying with the Nevada Medicaid State Plan is important for the False Claims Act.

301.    The Nevada Medicaid State Plan mandates that physical therapy is services provided by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified physical therapist to ameliorate/improve neuromuscular, musculoskeletal and cardiopulmonary

47

disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.a.

302.    The Nevada Medicaid State Plan mandates occupational therapy is services prescribed by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified occupational therapist to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.b.   The Nevada Medicaid State Plan mandates that speech and language therapy be provided to a recipient to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predictable time period and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.c.

303.    Jonathan Gottlieb knowingly makes or causes to be made a false record or statement to a false claim when he certifies to Nevada Medicaid that MLF is performing medically necessary therapy, and properly billing for the services.

304.    Jonathan Gottlieb had knowledge of the ongoing fraudulent billing practices based on the State of Nevada Board of Physical Therapy Examiners' ("the Board") May 7, 2015 letter to MLF, and prior to any employee complaints regarding MLF's billing practices.

305.    Even though a relator is not required to identify every conceivable detail of a fraud to satisfy Rule 9(b) and then, even if specific false claims were not alleged, Relator need only allege sufficient indicia of reliability, Relator in this case has in fact alleged the who, what, where, when, how, why of the fraud alleged in this Count:

48

a.   Who – Jonathan Gottlieb, co-owner of MLF.

b.   What – Jonathan Gottlieb carries out MLF's policy of directing therapist to falsify progress reports to ensure that the reports will support authorization for more therapy billed to Medicaid.  Jonathan carries out MLF's policy of directing therapists to bill their services under the billing code 97530, regardless of the services rendered.

c.   Where – MLF is located in Las Vegas, Nevada.

d.   When – Welch noticed the fraudulent activity when she started working at MLF in September 2013, however it is likely that the fraud began several years prior. The fraudulent activity continues to the present, as evidence by Ann Marie Gottlieb's May 2015 letter to witness Jane Doe.

e.   Why – To generate as much revenue from Medicaid as possible, without regard to proper billing procedures, medical necessity or the real needs of the children. To support claims submitted to bolster medical necessity.

f.   How – Jonathan is responsible for day-to-day operations and therefore assists in monitoring and reviewing therapists' progress reports to ensure that the reports support the authorization of more therapy.  Jonathan's August 18, 2014 email directing therapists to "put down the highest number of recommended visits weekly for patients." Jonathan's March 10, 2015 email to therapists to certify that their recommendations are accurate and compliant with American Speech-Language-Hearing Association ("ASHA") professional standards.  Jonathan monitors therapists to ensure that they bill their services under the billing code 97530, regardless of the services

49

rendered. MLF management insert its own opinion regarding the care of patients and overrides the opinions of the therapists which are based on patients' needs and deficits, in order to maximize its reimbursement from insurance companies.

306.    The result of Jonathan's actions has led to the federal government and the State of Nevada to pay for medically unnecessary services, and paying for more expensive services than necessary.

307.    The United States of America and the State of Nevada have been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws and regulations in an as of yet undetermined amount.

## Count VII
### Violation of The Nevada False Claims Act, Nev. Rev. Stat. § 357.040(a)
### (against Defendant My Left Foot Children's Therapy, LLC)

308.    Welch re-alleges and incorporates the allegations set forth above as though fully alleged herein.

309.    The Nevada False Claims Act imposes liability on any person who knowingly presents or causes to be presented a false claim or payment or approval.  Nev. Rev. Stat. § 357.040(a).

310.    The Medicaid program is funded by the federal government and the states. The federal government pays Nevada for a specified percentage of the Medicaid program expenditures.

311.    The Nevada Medicaid State Plan implicates the False Claims Act because the Nevada Medicaid program is funded at least in part by the federal government. Federal dollars

are at stake in Medicaid reimbursement. Complying with the Nevada Medicaid State Plan is important for the False Claims Act.

312.    The Nevada Medicaid State Plan mandates that physical therapy is services provided by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified physical therapist to ameliorate/improve neuromuscular, musculoskeletal and cardiopulmonary disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.a.

313.    The Nevada Medicaid State Plan mandates occupational therapy is services prescribed by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified occupational therapist to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.b.

314.    The Nevada Medicaid State Plan mandates that speech and language therapy be provided to a recipient to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predictable time period and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.c.

315.    MLF, by and through its officers, agents, supervisors, and employees, knowingly presented or caused to be presented claims to obtain payment for medically unnecessary services, and overbilled services.

51

316. Even though a relator is not required to identify every conceivable detail of a fraud to satisfy Rule 9(b) and then, even if specific false claims were not alleged, Relator need only allege sufficient indicia of reliability, Relator in this case has in fact alleged the who, what, where, when, how, why of the fraud alleged in this Count:

a. Who – MLF and its officers, agents, supervisors and employees.

b. What – MLF regularly provides therapy to patients who are ineligible for speech and language therapy, such as patients with developmental errors, Spanish-speaking patients who have no diagnostically confirmed speech and language problems, patients who are too medically or cognitively impaired to benefit from therapy, and patients who no longer demonstrate functional impairment.   MLF also unnecessary extends treatment for patients by mandating that therapists draft progress reports to show that patients needed more therapy – when in many cases more therapy is not medically necessary. MLF demands that its occupational and physical therapists provide therapy to patients regardless of the patients' needs, and does not allow therapists to discharge patients. MLF demands that therapists bill for services rendered using a singular billing code 97530, regardless of the services.

c. Where – MLF is located in Las Vegas, Nevada.

d. When – Welch noticed the fraudulent activity when she started working at MLF in September 2013, however it is likely that the fraud began several years prior. The fraudulent activity continues to the present, as evidence by Ann Marie Gottlieb's May 2015 letter to witness Jane Doe.

e.   Why – To generate as much revenue from Medicaid as possible, without regard to proper billing procedures, medical necessity or the real needs of the children. To support claims submitted to bolster medical necessity.

f.   How – MLF provides medically unnecessary services by promoting a policy of treating every child, regardless of the child's medical needs.  MLF also maintains a policy that all children make progress when receiving therapy. MLF disciplines therapists who seek to discharge patients from therapy.  MLF demands that therapists bill for services rendered using a singular billing code 97530, regardless of the services. MLF management insert its own opinion regarding the care of patients and overrides the opinions of the therapists which are based on patients' needs and deficits, in order to maximize its reimbursement from insurance companies.

317.   The result of MLF's actions has led to the federal government and the State of Nevada to pay for medically unnecessary services, paying for more expensive services than necessary.

318.   The United States of America and the State of Nevada have been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws and regulations in an as of yet undetermined amount.

**<u>Count VIII</u>**
**Violation of The Nevada False Claims Act, Nev. Rev. Stat. § 357.040(a)**
**(against Defendant Ann Marie Gottlieb)**

53

319.    Welch re-alleges and incorporates the allegations set forth above as though fully alleged herein.

320.    The Nevada False Claims Act imposes liability on any person who knowingly presents or causes to be presented a false claim or payment or approval.  Nev. Rev. Stat. § 357.040(a).

321.    The Medicaid program is funded by the federal government and the states. The federal government pays Nevada for a specified percentage of the Medicaid program expenditures.

322.    The Nevada Medicaid State Plan implicates the False Claims Act because the Nevada Medicaid program is funded at least in part by the federal government. Federal dollars are at stake in Medicaid reimbursement. Complying with the Nevada Medicaid State Plan is important for the False Claims Act.

323.    The Nevada Medicaid State Plan mandates that physical therapy is services provided by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified physical therapist to ameliorate/improve neuromuscular, musculoskeletal and cardiopulmonary disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity. *See* The Nevada Medicaid State Plan at §11.a.

324.    The Nevada Medicaid State Plan mandates occupational therapy is services prescribed by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified occupational therapist to ameliorate/improve functional disabilities which can respond or

improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity. *See* The Nevada Medicaid State Plan at §11.b.

325.     The Nevada Medicaid State Plan mandates that speech and language therapy be provided to a recipient to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predictable time period and that such therapy is based on medical necessity. *See* The Nevada Medicaid State Plan at §11.c.

326.     Ann Marie Gottlieb knowingly presents or causes to be presented claims to obtain payment for medically unnecessary services and overbilled services.

327.     Ann Marie Gottlieb had knowledge of the ongoing fraudulent billing practices based on the State of Nevada Board of Physical Therapy Examiners' ("the Board") May 7, 2015 letter to MLF, and prior to any employee complaints regarding MLF's billing practices.

328.     Even though a relator is not required to identify every conceivable detail of a fraud to satisfy Rule 9(b) and then, even if specific false claims were not alleged, Relator need only allege sufficient indicia of reliability, Relator in this case has in fact alleged the who, what, where, when, how, why of the fraud alleged in this Count:

    a.   Who – Ann Marie Gottlieb, co-owner of MLF.

    b.   What –Ann Marie regularly directs therapists to provided therapy to patients who were ineligible for speech and language therapy, such as patients with developmental errors, Spanish-speaking patients who have no diagnostically confirmed speech and language problems, patients who are too medically or cognitively impaired to benefit from therapy, and patients who no longer demonstrate functional impairment. Additionally, Ann Marie strongly

55

discourages therapists from discharging patients and encourages therapists to unnecessarily extend treatment for patients when more therapy is not medically necessary.  Ann Marie implements MLF's policies and practices by directing the occupational and physical therapists to provide therapy to patients regardless of the patients' needs, and rejecting discharge of patients. Ann Marie implements MLF's policies and practices by demanding that all occupational and physical therapists bill for services rendered using a singular billing code, 97530, regardless of the services rendered.

c.  Where – Ann Marie lives in Las Vegas, Nevada.

d.  When – Welch noticed the fraudulent activity when she started working at MLF in September 2013, however it is likely that the fraud began several years prior. The fraudulent activity continues to the present, as evidence by Ann Marie Gottlieb's May 2015 letter to witness Jane Doe.

e.  Why – To generate as much revenue from Medicaid as possible, without regard to proper billing procedures, medical necessity or the real needs of the children. To support claims submitted to bolster medical necessity.

f.  How – Ann Marie drafts memos to therapists which outline MLF's policy: to treat every child that walks through the door, regardless of medical necessity or even proper medical authorization.  In Ann Marie's memos, she dismisses any possibility that speech and language therapy is not appropriate for a child. Ann Marie also emphatically instructs MLF therapists to look for progress in all of MLF's patients and to continue to provide treatment regardless of the medical needs of the patient.  Ann Marie tells therapists: "No Child NEVER

makes NO PROGRESS.  It's an impossibility."  Ann Marie also monitors and

reviews progress reports drafted by therapists. Ann Marie promotes MLF's

policy of occupational and physical therapists billing all services rendered

using a singular billing code, 97530, regardless of the services rendered.  MLF

management insert its own opinion regarding the care of patients and

overrides the opinions of the therapists which are based on patients' needs and

deficits, in order to maximize its reimbursement from insurance companies.

329.     The result of Ann Marie Gottlieb's actions has led to the federal government and

the State of Nevada to pay for medically unnecessary services, and paying for more expensive

services than necessary.

330.     The United States of America and the State of Nevada have been damaged by all

of the aforementioned misrepresentations and failures to comply with requisite laws and

regulations in an as of yet undetermined amount.

### Count X
### Violation of The Nevada False Claims Act, Nev. Rev. Stat. § 357.040(a)
### (against Defendant Jonathan Gottlieb)

331.     Welch re-alleges and incorporates the allegations set forth above as though fully

alleged herein.

332.     The Nevada False Claims Act imposes liability on any person who knowingly

presents or causes to be presented a false claim or payment or approval.  Nev. Rev. Stat. §

357.040(a).

333.     The Medicaid program is funded by the federal government and the states. The

federal government pays Nevada for a specified percentage of the Medicaid program

expenditures.

334.    The Nevada Medicaid State Plan implicates the False Claims Act because the Nevada Medicaid program is funded at least in part by the federal government. Federal dollars are at stake in Medicaid reimbursement. Complying with the Nevada Medicaid State Plan is important for the False Claims Act.

335.    The Nevada Medicaid State Plan mandates that physical therapy is services provided by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified physical therapist to ameliorate/improve neuromuscular, musculoskeletal and cardiopulmonary disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.a.

336.    The Nevada Medicaid State Plan mandates occupational therapy is services prescribed by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified occupational therapist to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.b.

337.    The Nevada Medicaid State Plan mandates that speech and language therapy be provided to a recipient to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predictable time period and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.c.

338.    Jonathan Gottlieb, knowingly presents or causes to be presented claims to obtain payment for medically unnecessary services, and overbilled services.

339.    Jonathan Gottlieb had knowledge of the ongoing fraudulent billing practices based on the State of Nevada Board of Physical Therapy Examiners' ("the Board") May 7, 2015 letter to MLF, and prior to any employee complaints regarding MLF's billing practices.

340.    Even though a relator is not required to identify every conceivable detail of a fraud to satisfy Rule 9(b) and then, even if specific false claims were not alleged, Relator need only allege sufficient indicia of reliability, Relator in this case has in fact alleged the who, what, where, when, how, why of the fraud alleged in this Count:

    a.   Who –Jonathan Gottlieb, co-owner of MLF.

    b.   What –Jonathan is responsible for day-to-day operations at MLF.  Jonathan implements MLF's policies and practices of providing therapy to patients who were ineligible for speech and language therapy, such as patients with developmental errors, Spanish-speaking patients who have no diagnostically confirmed speech and language problems, patients who are too medically or cognitively impaired to benefit from therapy, and patients who no longer demonstrate functional impairment. Jonathan also strongly discourages therapists from discharging patients and encourages therapists to unnecessarily extend treatment for patients when more therapy is not medically necessary.  Jonathan implements MLF's policies and practices of demanding that occupational and physical therapists provide therapy to patients regardless of the patients' needs, and rejecting discharge of patients. Jonathan implements MLF's policies and practices of demanding that

occupational and physical therapists bill for services rendered using a singular billing code, 97530, regardless of the services rendered.

c. Where – Jonathan Gottlieb lives in Las Vegas, Nevada.

d. When – Welch noticed the fraudulent activity when she started working at MLF in September 2013, however it is likely that the fraud began several years prior. The fraudulent activity continues to the present, as evidence by Ann Marie Gottlieb's May 2015 letter to witness Jane Doe.

e. Why – To generate as much revenue from Medicaid as possible, without regard to proper billing procedures, medical necessity or the real needs of the children. To support claims submitted to bolster medical necessity.

f. How – Jonathan, by managing the day-today operations of MLF, promotes the policy of treating every child, regardless of the child's medical needs as well as the policy to unnecessary extend therapy for patients. Jonathan promotes MLF's policy of occupational and physical therapists billing services using a singular billing code, 97530, regardless of services rendered.  MLF management insert its own opinion regarding the care of patients and overrides the opinions of the therapists which are based on patients' needs and deficits, in order to maximize its reimbursement from insurance companies.

341.    The result of Jonathan Gottlieb's actions has led to the federal government and the State of Nevada to pay for medically unnecessary services, and paying for more expensive services than necessary.

342.    The United States of America and the State of Nevada have been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws and regulations in an as of yet undetermined amount.

**Count IV**
**Violation of The Nevada False Claims Act, Nev. Rev. Stat. § 357.040(b)**
**(against Defendant My Left Foot Children's Therapy)**

343.    Welch re-alleges and incorporates the allegations set forth above as though fully alleged herein.

344.    The Nevada False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.  Nev. Rev. Stat. § 357.040(b).

345.    The Medicaid program is funded by the federal government and the states. The federal government pays Nevada for a specified percentage of the Medicaid program expenditures.

346.    The Nevada Medicaid State Plan implicates the False Claims Act because the Nevada Medicaid program is funded at least in part by the federal government. Federal dollars are at stake in Medicaid reimbursement. Complying with the Nevada Medicaid State Plan is important for the False Claims Act.

347.    The Nevada Medicaid State Plan mandates that physical therapy is services provided by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified physical therapist to ameliorate/improve neuromuscular, musculoskeletal and cardiopulmonary disabilities which can respond or improve as a result of the prescribed treatment plan in a

reasonable, predicable period of time, and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.a.

348.     The Nevada Medicaid State Plan mandates occupational therapy is services prescribed by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified occupational therapist to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.b.

349.     The Nevada Medicaid State Plan mandates that speech and language therapy be provided to a recipient to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predictable time period and that such therapy is based on medical necessity. *See* The Nevada Medicaid State Plan at §11.c.

350.     MLF, by and through its officers, agents, supervisors, and employees, knowingly makes or causes to be made a false record or statement to a false claim when it certifies to Nevada Medicaid that it is performing medically necessary therapy and properly billing for services rendered.

351.     MLF had knowledge of the ongoing fraudulent billing practices based on the State of Nevada Board of Physical Therapy Examiners' ("the Board") May 7, 2015 letter to MLF, and prior to any employee complaints regarding MLF's billing practices.

352.     Even though a relator is not required to identify every conceivable detail of a fraud to satisfy Rule 9(b) and then, even if specific false claims were not alleged, Relator need

only allege sufficient indicia of reliability, Relator in this case has in fact alleged the who, what, where, when, how, why of the fraud alleged in this Count:

a.  Who – MLF and its officers, agents, supervisors and employees.

b.  What – MLF directs its therapists to falsify progress reports to ensure that the reports will support authorization for more therapy billed to Medicaid.  MLF directs occupational and physical therapists to bill every therapy session using a singular billing code, 97530, regardless of the services rendered.

c.  Where – MLF is located in Las Vegas, Nevada.

d.  When – Welch noticed the fraudulent activity when she started working at MLF in September 2013, however it is likely that the fraud began several years prior. The fraudulent activity continues to the present, as evidence by Ann Marie Gottlieb's May 2015 letter to witness Jane Doe.

e.  Why – To generate as much revenue from Medicaid as possible, without regard to proper billing procedures, medical necessity or the real needs of the children. To support claims submitted to bolster medical necessity.

f.  How – MLF monitors and reviews progress reports to ensure that the reports support the authorization of more therapy.  If the report does not support more therapy, MLF will direct the therapist to alter the report or it will discipline the therapist.  MLF directs occupational and physical therapists to bill for all services rendered using a singular billing code, 97530, claiming that doing so would save MLF money.

353.     The result of MLF's actions has led to the federal government and the State of Nevada to pay for medically unnecessary services, and paying for more expensive services than necessary.

354.     The United States of America and the State of Nevada have been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws and regulations in an as of yet undetermined amount.

**Count XI**
**Violation of The Nevada False Claims Act, Nev. Rev. Stat. § 357.040(b)**
**(against Defendant Ann Marie Gottlieb)**

355.     Welch re-alleges and incorporates the allegations set forth above as though fully alleged herein.

356.     The Nevada False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.  Nev. Rev. Stat. § 357.040(b).

357.     The Medicaid program is funded by the federal government and the states. The federal government pays Nevada for a specified percentage of the Medicaid program expenditures.

358.     The Nevada Medicaid State Plan implicates the False Claims Act because the Nevada Medicaid program is funded at least in part by the federal government. Federal dollars are at stake in Medicaid reimbursement. Complying with the Nevada Medicaid State Plan is important for the False Claims Act.

359.     The Nevada Medicaid State Plan mandates that physical therapy is services provided by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified

64

physical therapist to ameliorate/improve neuromuscular, musculoskeletal and cardiopulmonary disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity. *See* The Nevada Medicaid State Plan at §11.a.

360.    The Nevada Medicaid State Plan mandates occupational therapy is services prescribed by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified occupational therapist to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity. *See* The Nevada Medicaid State Plan at §11.b.

361.    The Nevada Medicaid State Plan mandates that speech and language therapy be provided to a recipient to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predictable time period and that such therapy is based on medical necessity. *See* The Nevada Medicaid State Plan at §11.c.

362.    Ann Marie Gottlieb knowingly makes or causes to be made a false record or statement to a false claim when she certifies to Nevada Medicaid that MLF is performing medically necessary therapy, and properly billing for the services rendered.

363.    Ann Marie Gottlieb had knowledge of the ongoing fraudulent billing practices based on the State of Nevada Board of Physical Therapy Examiners' ("the Board") May 7, 2015 letter to MLF, and prior to any employee complaints regarding MLF's billing practices.

364.    Even though a relator is not required to identify every conceivable detail of a fraud to satisfy Rule 9(b) and then, even if specific false claims were not alleged, Relator need

only allege sufficient indicia of reliability, Relator in this case has in fact alleged the who, what, where, when, how, why of the fraud alleged in this Count:

a.  Who – Ann Marie Gottlieb, co-owner of MLF.

b.  What – Ann Marie directs therapist to falsify progress reports to ensure that the reports will support authorization for more therapy billed to Medicaid. Ann Marie directs therapists to bill for services rendered using a singular billing code, 97530, regardless of the services rendered.

c.  Where – MLF is located in Las Vegas, Nevada.

d.  When – Welch noticed the fraudulent activity when she started working at MLF in September 2013, however it is likely that the fraud began several years prior. The fraudulent activity continues to the present, as evidence by Ann Marie Gottlieb's May 2015 letter to witness Jane Doe.

e.  Why – To generate as much revenue from Medicaid as possible, without regard to proper billing procedures, medical necessity or the real needs of the children. To support claims submitted to bolster medical necessity.

f.  How – Ann Marie monitors and reviews the therapists' progress reports to ensure that the reports support more therapy.  If a therapist's progress report does not support more therapy, Ann Marie will direct the therapist to alter the report or she will discipline the therapist.  Ann Marie directs therapists to bill for services rendered using a singular billing code, 97530, regardless of the services rendered. MLF management insert its own opinion regarding the care of patients and overrides the opinions of the therapists which are based on

patients' needs and deficits, in order to maximize its reimbursement from insurance companies.

365.     The result of Ann Marie's actions has led to the federal government and the State of Nevada to pay for medically unnecessary services, and paying for more expensive services than necessary.

366.     The United States of America and the State of Nevada have been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws and regulations in an as of yet undetermined amount.

### Count XII
### Violation of The Nevada False Claims Act, Nev. Rev. Stat. § 357.040(b)
### (against Defendant Jonathan Gottlieb)

367.     Welch re-alleges and incorporates the allegations set forth above as though fully alleged herein.

368.     The Nevada False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.  Nev. Rev. Stat. § 357.040(b).

369.     The Medicaid program is funded by the federal government and the states. The federal government pays Nevada for a specified percentage of the Medicaid program expenditures.

370.     The Nevada Medicaid State Plan implicates the False Claims Act because the Nevada Medicaid program is funded at least in part by the federal government. Federal dollars are at stake in Medicaid reimbursement. Complying with the Nevada Medicaid State Plan is important for the False Claims Act.

371.     The Nevada Medicaid State Plan mandates that physical therapy is services provided by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified physical therapist to ameliorate/improve neuromuscular, musculoskeletal and cardiopulmonary disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.a.

372.     The Nevada Medicaid State Plan mandates occupational therapy is services prescribed by a physician or other licensed practitioner of the healing arts within the scope of practice under state law and provided to a recipient by or under the direction of a qualified occupational therapist to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predicable period of time, and that such therapy is based on medical necessity.  *See* The Nevada Medicaid State Plan at §11.b.

373.     The Nevada Medicaid State Plan mandates that speech and language therapy be provided to a recipient to ameliorate/improve functional disabilities which can respond or improve as a result of the prescribed treatment plan in a reasonable, predictable time period and that such therapy is based on medical necessity. *See* The Nevada Medicaid State Plan at §11.c.

374.     Jonathan Gottlieb knowingly makes or causes to be made a false record or statement to a false claim when he certifies to Nevada Medicaid that MLF is performing medically necessary therapy, and properly billing for the services rendered.

375.    Jonathan Gottlieb had knowledge of the ongoing fraudulent billing practices based on the State of Nevada Board of Physical Therapy Examiners' ("the Board") May 7, 2015 letter to MLF, and prior to any employee complaints regarding MLF's billing practices.

376.    Even though a relator is not required to identify every conceivable detail of a fraud to satisfy Rule 9(b) and then, even if specific false claims were not alleged, Relator need only allege sufficient indicia of reliability, Relator in this case has in fact alleged the who, what, where, when, how, why of the fraud alleged in this Count:

    a.  Who – Jonathan Gottlieb, co-owner of MLF.

    b.  What – Jonathan Gottlieb carries out MLF's policy of directing therapist to falsify progress reports to ensure that the reports will support authorization for more therapy billed to Medicaid.  Jonathan carries out MLF's policy of directing therapists to bill their services using a singular billing code, 97530, regardless of services rendered.

    c.  Where – MLF is located in Las Vegas, Nevada.

    d.  When – Welch noticed the fraudulent activity when she started working at MLF in September 2013, however it is likely that the fraud began several years prior. The fraudulent activity continues to the present, as evidence by Ann Marie Gottlieb's May 2015 letter to witness Jane Doe.

    e.  Why – To generate as much revenue from Medicaid as possible, without regard to proper billing procedures, medical necessity or the real needs of the children. To support claims submitted to bolster medical necessity.

    f.  How – Jonathan is responsible for day-to-day operations and therefore assists in monitoring and reviewing therapists' progress reports to ensure that the

69

reports support more therapy.  Jonathan monitors therapists to ensure that they bill for services using the singular billing code, 97530, regardless of the services rendered. MLF management insert its own opinion regarding the care of patients and overrides the opinions of the therapists which are based on patients' needs and deficits, in order to maximize its reimbursement from insurance companies.

377.    The result of Jonathan's actions has led to the federal government and the State of Nevada to pay for medically unnecessary services, and paying for more expensive services than necessary.

378.    The United States of America and the State of Nevada have been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws and regulations in an as of yet undetermined amount.

## PRAYER FOR RELIEF

WHEREFORE, the Relator Mary Kaye Welch, acting on behalf of and in the name of the United States of America and the State of Nevada, and on her own behalf, prays that judgment be entered against Defendants for violation of the False Claims Act and the Nevada False Claims Act as follows:

(a) In favor of the United States and the State of Nevada against the Defendants for treble damages to the federal government and the State from the submission of false claims, and the maximum civil penalties for each violation of the False Claims Acts;

(b) In favor of the Relator for the maximum amount pursuant to 31 U.S.C. § 3730(d) to include reasonable expenses, attorney fees, and costs incurred by the Relator;

(c) For all costs of the False Claims Act civil action; and

(d) In favor of the Relator for the maximum amount pursuant to Nev. Rev. Stat. § 357.050 to include reasonable expenses, attorney fees, and costs incurred by the Relator;

(e) For all costs of the Nevada False Claims Act civil action; and

(f) In favor of the Relator and the United States and the State of Nevada for further relief as this court deems just and equitable.

## **<u>DEMAND FOR A JURY TRIAL</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and pursuant to the local rules of this Court, the Relator demands a jury trial as to all issues so triable.

Dated: September 28, 2015                         Respectfully submitted,

By:     /s/ L. Timothy Terry_____
David Scher (admitted *pro hac vice*)
R. Scott Oswald (admitted *pro hac vice*)
The Employment Law Group, P.C.
soswald@employmentlawgroup.com
dscher@employmentlawgroup.com
888 17th Street, NW, Suite 900
Washington, DC 20006
Telephone: (202) 331-2883
Facsimile: (202) 261-2835

L. Timothy Terry, Esq.
The Terry Law Firm, Ltd
102 N. Curry Street
Carson City, NV 89703
tim@theterrylawfirm.com
Telephone: (775) 883-2348
Facsimile: (775) 883-2347

*Attorneys for Plaintiff/Relator Mary Kaye Welch*

71

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this the 28th day of September, 2014, the foregoing was

filed via ECF/CMS and served via UPS for overnight delivery upon:


Troy K. Flake
United States Attorney
Suite 5000
333 Las Vegas Boulevard South
Las Vegas, Nevada 89101

Mark N. Kemberling
Nevada Attorney General's Office
555 E. Washington Ave, Ste. 3900
Las Vegas, NV 89101

Shawn Hanson
Maria Ellinikos
Akin Gump Strauss Hauer & Feld LLP
580 California Street, Suite 1500
San Francisco, CA 94104
Tel: 415-765-9500
Fax: 415-765-9501
*Attorneys for Defendants My Left Foot*
*Children's Therapy, LLC;*
*John Gottlieb and Ann Marie Gottlieb*

Suzanne L. Martin
Ogletree, Deakins, Nash, Smoak, & Stewart, P.C.
Wells Fargo Tower
3800 Howard Hughes Pkwy
Suite 1500
Las Vegas, NV 89169
702-369-6800
Fax: 702-369-6888
*Attorneys for Defendants My Left Foot*
*Children's Therapy, LLC;*
*John Gottlieb and Ann Marie Gottlieb*


      /s/ L. Timothy Terry
L. Timothy Terry

72