UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA and THE STATE OF NEVADA ex rel. MARY KAYE WELCH,<br><br>Plaintiffs,<br><br>v.<br><br>MY LEFT FOOT CHILDREN'S THERAPY, LLC, ANN MARIE GOTTLIEB, and JONATHAN GOTTLIEB<br><br>Defendants. | Case No. 2:14-cv-01786-MMD-GWF<br><br>ORDER<br><br>(Defs.' Motion to Compel Arbitration and to Stay – ECF Nos. 20, 21.) |
|---|---|

**I.   SUMMARY**

Relator Mary Kaye Welch alleges that Defendants My Left Foot Children's Therapy, LLC ("MLF"), Ann Marie Gottlieb, and Jonathan Gottlieb violated the federal False Claims Act ("FCA") — and its Nevada equivalent — by unnecessarily treating and overbilling patients. (ECF No. 15.) Welch, who worked as a speech and language pathologist for MLF, brought suit on behalf of the United States and the State of Nevada. (ECF No. 1.) Although both declined to intervene (ECF No. 9), Welch continues to maintain the action on their behalf. *See* 31 U.S.C. § 3730(b)(1); NRS §§ 357.080, 357.130. Defendants, however, insist that Welch's claims are subject to an arbitration agreement she signed while applying to work for MLF. (ECF No. 20.) They accordingly move to compel arbitration and stay this litigation. (ECF Nos. 20, 21.) The Court has reviewed the parties' response and reply briefs. (ECF Nos. 23, 24, 25, 29.) For the reasons discussed below, the Motion to Compel Arbitration and Stay Action ("Motion") (ECF Nos. 20, 21) is denied.

## II. BACKGROUND

MLF, which is co-owned by Ann Marie and Jonathan Gottlieb, provides therapy services to children throughout Las Vegas. (ECF No. 15 at 2; ECF No. 22 at 2.) Welch worked for MLF as a speech and language pathologist between September 2013 and November 2014. (ECF No. 15 at 4; ECF No. 22 at 2.) During that period, Welch claims to have observed the improper treatment and billing practices underlying this lawsuit, which Welch initiated on behalf of the United States and the State of Nevada in October 2014. (*See* ECF No. 15 at 4.)

The Complaint[1] recounts several allegations of fraudulent treatment practices. Defendants, for example, allegedly provide unnecessary speech and language therapy to patients who cannot benefit from the treatment because of severe medical or cognitive impairments, or to patients who no longer exhibit functional impairments or lack any speech or language problem. (*Id.* at 29-70.) Next, Welch claims that Defendants require their therapists to draft inaccurate progress reports to ensure that patients continue receiving medically unnecessary treatment. (*Id.*) If they attempt to discharge patients, therapists are threatened with discipline. (*Id.*) MLF also allegedly requires therapists to use a single billing code for all therapeutic services, even if the services rendered would fall into a different code. (*Id.*)

According to the Complaint, Defendants use these policies and practices to charge the Nevada Medicaid program and Tricare — which offers Medicaid-like benefits to service members — for care that is not medically necessary. (*Id.* at 7-8.) Welch brings twelve claims under the FCA, 31 U.S.C. § 3729(a)(1)(A)-(B), and the analogous Nevada False Claims Act ("NFCA"), NRS § 357.040(a)-(b) (together, the "*qui tam* claims"), asserting that Defendants made (or caused to be made) false records that were used to present fraudulent claims to Medicaid and Tricare. (ECF No. 15 at 29-70.)

///

---

[1] Welch filed an Amended Complaint (ECF No. 15) on September 28, 2015. For ease of reference, in discussing "the Complaint," the Court will cite to ECF No. 15.

2

Welch initiated this action by filing a sealed complaint on October 28, 2014. (ECF No. 1.) On May 29, 2015, after an investigation, both the United States and the State of Nevada ("the government") declined to intervene. (ECF No. 9.) The government, however, retained its right to intervene for good cause at a later point in this litigation. (*Id.* at 3-4.) The government also stressed that the FCA and the NFCA provide for the government to object to any settlement or dismissal of the lawsuit. (*Id.* at 3 (citing 31 U.S.C. § 3730(b)(1); NRS § 357.080(1); *United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 723-25 (9th Cir. 1994)).)

## III.  LEGAL STANDARD

The *qui tam* provisions of the FCA enable private parties to "bring a civil action for a violation of [31 U.S.C. § 3729, which prohibits making false or fraudulent claims to the government,] for the person and for the United States Government." 31 U.S.C. § 3730(b)(1). A private party bringing a *qui tam* action is known as a "relator." Any action initiated under this provision must "be brought in the name of the Government," and may be dismissed only upon the consent of the court and the Attorney General. 31 U.S.C. § 3730(b)(1). After a relator commences a *qui tam* action, "the United States is given 60 days to review the claim and decide whether it will 'elect to intervene and proceed with the action.'" *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 932 (2009) (quoting 31 U.S.C. § 3730(b)(2), (b)(4)). The NFCA similarly allows a private plaintiff to bring a false claims action "on his or her own account and that of the State [and/or] a political subdivision." NRS § 357.080(1). The Nevada Attorney General also has 60 days to determine whether to intervene in the action.[2] NRS § 357.080(4).

When *qui tam* actions fall within the scope of an arbitration agreement, courts have, in some cases, referred them to arbitration. *See, e.g.*, *United States v. Bankers Ins. Co.*, 245 F.3d 315, 324-25 (4th Cir. 2001) (holding that a *qui tam* claim was subject to an arbitration provision that appeared in the government's contract). Section 2 of the

---

[2] As noted above, neither the United States nor the State of Nevada has intervened in this action. (ECF No. 9.)

Federal Arbitration Act ("FAA") provides that private arbitration agreements are considered "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (describing this provision as a "liberal federal policy favoring arbitration" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983))). The Supreme Court has interpreted Section 2 as requiring courts to "place arbitration agreements on an equal footing with other contracts." *Concepcion*, 563 U.S. at 339. It is well settled, however, that "[o]nly the *parties* to an arbitration agreement are bound by it." *In re EPD Inv. Co., LLC*, --- F.3d ----, Nos. 14-55740, 14-56478, 2016 WL 2620300, at *4 (9th Cir. May 9, 2016).

## IV. ANALYSIS

Welch signed an arbitration agreement with MLF while applying for the speech pathologist position.[3] (ECF No. 22 at 2, 6.) The agreement indicates that Welch and MLF will arbitrate "all disputes that may arise out of the employment context," including claims based on "state or federal law or regulation . . . with exception of claims arising under the National Labor Relations Act," state workers compensations laws, "or as otherwise required by state or federal law." (*Id.* at 4.) The agreement further provides that MLF and Welch will arbitrate "any claim, dispute, and/or controversy" that "aris[es] from, [is] related to, or ha[s] any relationship or connection whatsoever with [Welch's] seeking employment by, or employment or other association with [MLF]." (*Id.*) Defendants insist that Welch's *qui tam* claims fall within the broad scope of the arbitration agreement because they are state and federal law claims arising from Welch's alleged observations and experiences as an MLF employee. (*See* ECF No. 20 at 3.) Welch counters by pointing out that the government is the real party in interest to her action, and that the government never agreed to arbitrate its claims. (*See* ECF No. 23 at 3-4.) Because the government never signed the arbitration agreement, Welch contends that even the

---

[3]MLF requires prospective and current employees to agree to binding arbitration "[a]s a condition of initial employment and/or continued employment." (ECF No. 22 at 4.)

FAA's policy of favoring arbitration does not demand arbitration here. (*See id.*) The Court agrees with Welch.

### A. Scope and Validity of the Arbitration Agreement

The FAA applies to arbitration agreements that, like the document at issue here, are "contract[s] evidencing a transaction involving commerce." 9 U.S.C. § 2; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Once in play, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp.*, 207 F.3d at 1130 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). Moreover, when a contract includes an arbitration clause, it is an "established principle[]" to presume "arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *IATSE Local 720 v. InSync Show Prods., Inc.*, 801 F.3d 1033, 1041-42 (9th Cir. 2015) (quoting *AT&T Techs., Inc. v. Comm'cns Workers of Am.*, 475 U.S. 643, 650 (1986)).

Neither party disputes that the arbitration agreement is a valid contract between Welch and MLF. Instead, Welch objects to Defendants' reading of the agreement's scope and import — that is, whether the agreement even covers the *qui tam* claims, and, assuming it does, whether those claims may be sent to arbitration. (ECF No. 23 at 3-5.) As to the agreement's scope, Welch asserts that the *qui tam* claims do not, as stated in the arbitration agreement, "arise out of the employment context," or "aris[e] from, relate[] to, or hav[e] any relationship or connection whatsoever with [her] seeking employment by, or employment or other association with [MLF]." (ECF No. 22 at 4.) Welch insists that the *qui tam* claims are unrelated to her association with Defendants, and instead focus on Defendants' allegedly fraudulent billing practices. (ECF No. 23 at 5.)

///

///

Welch construes the arbitration agreement too narrowly. While it is true that the *qui tam* claims focus on Defendants' allegedly fraudulent provision of unnecessary therapy and improper billing practices, the Complaint states that Welch became aware of those practices through her work at MLF. (*See* ECF No. 15 at 4 ("Welch has intimate knowledge of Defendants' fraudulent conduct through her professional responsibilities at MLF.").) And the arbitration agreement covers, with limited exceptions not applicable here, any claim under federal or state law that "aris[es] out of 'or [is] related to' the employment relationship," or that "has any relationship or connection whatsoever" to Welch's employment. (ECF No. 22 at 4.) The Complaint makes clear that the *qui tam* claims arise from observations Welch made while employed by MLF. (*See, e.g.*, ECF No. 15 at 32, 35, 39, 42-43, 46, 49, 52, 56, 60, 63, 66, 69 (alleging, for each count of fraudulent conduct, that Welch noticed the conduct while she was an MLF employee).) Thus, although the *qui tam* claims are neither grounded in employment law nor directly based on Welch's former position at MLF, they are connected to her employment there.[4] Welch's claims are within the broad scope of the arbitration agreement.

**B.    Whether the Arbitration Agreement Extends to the Government**

Even a broadly worded arbitration agreement, however, applies only to the parties who agreed to its terms. *In re EPD Inv. Co.*, 2016 WL 2620300, at *4. Welch emphasizes that neither the federal nor state government signed the arbitration agreement, and that

///

---

[4]Welch compares this case to *Mikes v. Strauss*, 889 F. Supp. 746, 754-55 (S.D.N.Y. 1995), where a court in the Southern District of New York held that a former employee's *qui tam* action was beyond the scope of an arbitration clause that appeared in her employment agreement. The arbitration clause applied to "any disagreements, claims, questions or controversies which may arise out of or relate to this Agreement or out of its interpretation or any alleged breach thereof." *Id.* at 754. The court stressed that the plaintiff's "*qui tam* claims in no way impinge[d] on her employee status," and that the plaintiff could have brought the *qui tam* suit "[e]ven if [she] had never been employed by defendants." *Id.* MLF's arbitration agreement is broader, covering not only disputes arising from Welch's employment agreement, but any claim connected to her employment in general. (*See* ECF No. 22 at 4.) While it is true that a plaintiff need not be an employee of an entity to initiate an FCA action against it, *see* 31 U.S.C. § 3730(b), Welch disclosed in her Complaint that she knew about the alleged fraud precisely because of her employment with MLF. (*See* ECF No. 15 at 4.) Thus, with regard to the scope of the arbitration agreement at issue, the *Mikes* decision is distinguishable.

6

both entities are real parties in interest to this action. (ECF No. 23 at 3-4.) Despite the government's decision not to intervene in this case, Welch insists that the *qui tam* claims continue to implicate the government's interest, such that requiring arbitration of those claims is improper. (*Id.*) Defendants contend that whether the government is a party to the arbitration agreement makes no difference — the *qui tam* claims belong, at least in part, to Welch, who signed the agreement. (ECF No. 20 at 8-10; ECF No. 24 at 4-7.) Defendants assert that regardless of its status as a real party in interest, the government is not a party to this litigation, and therefore cannot stand in the way of the arbitration agreement.[5] (ECF No. 24 at 4-6; ECF No. 29 at 1-3.) Defendants' arguments are misplaced.

First, Defendants overstate the import of the government's decision not to intervene in the *qui tam* action. Citing *Eisenstein*, Defendants argue that the government "is a 'party' to a privately filed FCA action only if it intervenes in accordance with the procedures established by federal law." 556 U.S. at 933. In *Eisenstein*, the Supreme Court held that a 30-day timeline applied to a relator's appeal in an FCA action, rather than the 60-day timeline that applies when the United States is a party to an action. *Id.* at 937 (discussing Rule 4 of the Federal Rules of Appellate Procedure, which creates different deadlines for appealing a final judgment based on the United States' status as a party to a case). The Court recognized that the government is a real party in interest to an FCA action regardless of its decision to intervene in the case. *Id.* at 934-35. But unlike a party to a lawsuit, which is "one by or against whom a lawsuit is brought," *id.* at

///

---

[5]Defendants further argue that, as a matter of law, FCA claims may be arbitrated. (ECF No. 20 at 8-10; ECF No. 24 at 7-9.) Defendants rely primarily on nonbinding authority — a Fourth Circuit decision and two decisions from the Southern District of Ohio — to support this assertion. (*See* ECF No. 24 at 7-8 (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 323-25 (4th Cir. 2001); *United States ex rel. Hicks v. Evercare Hosp.*, No. 1:12-cv-887, 2015 WL 4498744, at *3 (S.D. Ohio July 23, 2015); *Deck v. Miami Jacobs Bus. Coll. Co.*, No. 3:12-cv-63, 2013 WL 394875, at *6-7 (S.D. Ohio Jan. 31, 2013)).) Because the Court finds dipositive the fact that the government never agreed to the arbitration agreement, the Court need not decide whether FCA claims may, as a matter of law, ever be submitted to arbitration.

933 (citation and alteration omitted), a real party in interest is "an actor with a substantive right whose interests may be represented in litigation by another." *Id.* at 934-35.

According to Defendants' logic, the government's status as a real party in interest means that the *qui tam* claims belong to Welch, who agreed to arbitrate them. But the Ninth Circuit has concluded that FCA *qui tam* claims belong to the government, not the relator. *Stoner v. Santa Clara Cty. Office of Educ.*, 502 F.3d 1116, 1126-27 (9th Cir. 2007) (holding that relators cannot proceed pro se in *qui tam* lawsuits). As the court explained, "[t]he FCA makes clear that notwithstanding the relator's statutory right to the government's share of the recovery, the underlying claim of fraud always belongs to the government." *Id.* at 1126. Relators thus do not prosecute "only their 'own case.'" *Id.* at 1126-27 (quoting 28 U.S.C. § 1654 (defining when litigants may appear without representation in federal court)). They also "represent[] the United States and bind[] it to any adverse judgment the relators may obtain." *Id.* at 1127. Given the government's interest in the outcome of the *qui tam* action, Defendants have not demonstrated that Welch's involvement in the lawsuit somehow transforms the fraud claims into her own.

Furthermore, Defendants have not explained how (or whether) the government's status as a real party in interest affects the fact that the government was not a party to the arbitration agreement. (*See* ECF No. 22.) Defendants, in short, seek to compel arbitration of claims in which the government has "a substantive right" that is "represented in litigation by another," but which the government never agreed to arbitrate. *Eisenstein*, 556 U.S. at 934-35. Extending the arbitration agreement to cover the non-signatory federal and Nevada governments would stretch the agreement beyond its scope. The FAA ensures that "private agreements to arbitrate are enforced according to their terms," but here, Defendants ask the Court to expand those terms to cover non-parties to the agreement. *Zenelaj v. Handybrook, Inc.*, 82 F. Supp. 3d 968, 970 (N.D. Cal. 2015) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

///

Second, Defendants' cited authority is either distinguishable or unpersuasive. (*See* ECF No. 20 at 8-10; ECF No. 24 at 7-8.) For example, Defendants point to *Bankers Ins. Co.*, 245 F.3d at 319-25, where the Fourth Circuit held that the federal government's FCA claim should be arbitrated according to the terms of a contract to which the government was a party. The court explained: "The Government should comply with its contract obligations, and it cannot avoid them merely by invoking a statutory civil claim, such as one contemplated under the FCA." *Id.* at 324. Here, by contrast, only Welch and MLF — and not the government — were parties to the arbitration agreement. While *Bankers Insurance Co.* suggests that the FCA does not, on its own, foreclose arbitration of *qui tam* claims, the case is silent as to arbitration agreements to which the government is not a party.

Defendants further highlight two unpublished decisions from a court — indeed, from the same District Judge — in the Southern District of Ohio, both of which held that a plaintiff's FCA claim was subject to arbitration even though the government was not a party to the underlying agreement. *See United States ex rel. Hicks v. Evercare Hosp.*, No. 1:12-cv-887, 2015 WL 4498744, at *3 (S.D. Ohio July 23, 2015); *Deck v. Miami Jacobs Bus. Coll. Co.*, No. 3:12-cv-63, 2013 WL 394875, at *6-7 (S.D. Ohio Jan. 31, 2013). Just as in this lawsuit, the government declined to intervene in the FCA claims at issue in *Hicks* and *Deck*. *See Hicks*, 2015 WL 4498744, at *3 (describing the government as the real party in interest); *Deck*, 2013 WL 394875, at *6. In both cases, however, the court emphasized that the government never objected to arbitration; instead, the government had asked the court to clarify that any arbitration would result in a non-binding recommendation. *Hicks*, 2015 WL 4498744, at *3; *Deck*, 2013 WL 394875, at *6. Here, conversely, the government filed an opposition to Defendants' Motion, arguing that the government cannot be bound by an arbitration agreement that it

///

///

///

never signed.[6] (ECF No. 25 at 3.) The government has not consented to arbitration. In fact, it has objected to arbitration.

More important, the *Deck* court reasoned that any *qui tam* action "belong[s] to" both the relator and the government. *Deck*, 2013 WL 394875, at *7. Because the relator had agreed to arbitrate the *qui tam* claims, the government's interest in those claims was also subject to arbitration. *Id.* (emphasizing that FCA claims are "for the person and for the United States Government" (quoting 31 U.S.C. § 3730(b)). But, as discussed above, the opposite also holds true — if the *qui tam* action "belongs to" the government, a nonparty to the arbitration agreement, then requiring both the government and the relator to arbitrate would exceed the bounds of the arbitration agreement regardless of whether the government objects to arbitration.

A similar conclusion was reached in *Mikes v. Strauss*, 889 F. Supp. 746, 754-55 (S.D.N.Y. 1995). Like Welch's claims here, the plaintiff in *Mikes* brought *qui tam* claims against her former employers for their allegedly improper medical billing practices.[7] *Id.* at 749. The court denied the defendants' motion to compel arbitration of the *qui tam* claims, finding that (1) they were not covered by the arbitration agreement; and (2) even if they were, the government's status as a non-party to the agreement foreclosed arbitration. *Id.* at 754-55; (*see supra* note 4). Although the court did not rule on whether all causes of action brought under the FCA may be arbitrated, *Mikes*, 889 F. Supp. at 755 n.7, the court was not persuaded that the "plaintiff, suing on the government's behalf, [was] necessarily bound by [the arbitration agreement's] terms. *Id.* at 755. The plaintiff "st[ood]

///

---

[6] The government also stated that any arbitration decision would be "advisory only" because the *qui tam* claims cannot be dismissed without the federal Attorney General's consent. (ECF No. 25 at 3.) But the government appears to have raised this argument as a reason to reject arbitration, not as a basis for consenting to arbitration.

[7] The plaintiff also claimed that her former employer had discharged her in retaliation for her *qui tam* claims, in violation of 30 U.S.C. § 3730(h). *Mikes*, 889 F. Supp. at 750. Considering the retaliation claim separately from the *qui tam* claims, the court held that the arbitration agreement covered the retaliation claim because it related to the plaintiff's former employment. *Id.* at 755-56.

as a private representative of the government," which never agreed to arbitrate the *qui tam* claims. *Id.*

While the *Mikes* court based its ruling on the narrow scope of the arbitration agreement at issue, the Court finds its reasoning regarding the government's status as a non-party to the agreement persuasive. The arbitration agreement covers only Welch and MLF, not the government. (*See* ECF No. 22.) Because the fraud claims at the heart of this case belong to the government, the Court will not compel arbitration of the *qui tam* claims.

Defendants' Motion to Compel (ECF No. 20) is accordingly denied. Finally, because this dispute will remain before the Court, Defendants' Motion to Stay (ECF No. 21) is also denied.

## V.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Defendants' Motion to Compel Arbitration and Stay Action (ECF Nos. 20, 21) is denied.

DATED THIS 13th day of June 2016

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE